Michael CECIL, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 2008–SC–000159–MR, 2008–SC–000369–MR.

Supreme Court of Kentucky.

Oct. 29, 2009.

**14**

Daniel T. Goyette, Angela Marie Rea, Louisville Metro Public Defenders, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Appellant, Michael Cecil, was indicted on two counts of rape in the first degree and one count of intimidating a participant in the legal process. The first count of rape was based on allegations made by M.W., Appellant's former niece. The second count of rape was based on allegations made by J.A., Appellant's sister-in-law.

M.W. testified that Appellant repeatedly raped her between January 2001 and December 2004, when she was eight years old until she was eleven years old. Appellant was married to M.W.'s aunt during this time and they lived with M.W.'s grandparents. M.W. frequently visited the home where the rapes occurred. In addition to instances of sexual touching, M.W. testified to three specific instances of rape.

The first rape was in her grandmother's bedroom, which she recalled because of a large mirror above the bed. The second rape occurred in Appellant's bedroom during the middle of the day, while the other children in the home were playing outside. M.W. recalled that she was wearing a towel when Appellant began raping her. During the act, M.W.'s brother, M.J.W., walked into the bedroom. Startled, Appellant jumped from the bed. M.J.W. left and returned outside.

M.J.W. testified that he went to the bedroom because he had heard M.W. scream. When he entered, he saw that both Appellant and M.W. were unclothed from the waist up, and that M.W. was crying. Appellant leapt from the bed, then followed M.J.W. outside. He told M.J.W. that if he told anyone what he had seen, he would kill him. This threat gave rise to the intimidation charge.

M.W. testified that a third rape occurred after the family had moved to another

house in Louisville. She stated that Appellant entered her room while everyone was sleeping and raped her. She further testified that Appellant removed her clothing and held her hands back with his arms.

The rapes ceased when Appellant and M.W.'s aunt divorced and he moved out of the house. Months later, M.W. ran away from home. When she returned, she confessed the rapes to her grandmother. At this time, M.J.W. also told what he had seen. M.W.'s grandmother contacted the police and Detective Joshua Judah began investigating the case. During his interviews of the family, he learned that Appellant had also raped his sister-in-law, J.A.

J.A. claimed that Appellant raped her in 2001, when she was fourteen years old. She reported to police that Appellant had given her wine coolers to drink while the rest of the family was preparing for Thanksgiving the following day. She passed out from the alcohol and awoke on a bed with her shorts and underwear having been removed. Appellant was on top of her, forcing his penis into her vagina. He was wearing a condom. She screamed and struggled until he left the room. J.A. ran to her own room and pushed a dresser in front of the door to keep him out.

Two months after Detective Judah was assigned to the case, he called Appellant in for an interview. Appellant denied any misconduct with M.W. and specifically denied the incident in the bedroom witnessed by M.J.W. Appellant did, however, admit having sexual intercourse with J.A. According to Appellant, J.A. had seduced him and forced herself upon him.

Appellant was eventually indicted on the aforementioned charges. He filed a motion to sever the charges involving M.W. and M.J.W. from the rape charge involving J.A. With the Commonwealth's consent, the motion was granted. The Commonwealth elected to proceed first with the rape charge involving M.W. and the intimidation charge involving M.J.W.

Following a jury trial, Appellant was found guilty of first-degree rape and intimidating a participant in the legal process. The jury recommended a twenty-year sentence on the rape count and a five-year sentence on the intimidation count, to be run consecutively. The trial court sentenced Appellant in accordance with the jury's recommendation.

Following that trial, the Commonwealth made an offer on a plea of guilty as to the rape charge involving J.A. Appellant agreed to the offer in exchange for a sentence of imprisonment for ten years. The trial court accepted the offer and, specifically citing KRS 532.110(1)(d), ordered that the ten-year sentence run consecutive to the twenty-year sentence Appellant had received for the other rape conviction, but concurrent to the five-year sentence for intimidation. Appellant reserved the right to appeal the application of KRS 532.110(1)(d) to his sentence.

Appellant now appeals his conviction in the M.W. case and his sentence in the J.A. case. The cases have been consolidated for purposes of appeal. We turn first to Appellant's arguments with respect to the convictions involving M.W. and M.J.W.

### Miranda Warnings

■ Appellant first claims that his constitutional rights were violated when Detective Judah questioned him without first apprising him of his Miranda rights. Defense counsel moved to suppress Appellant's statements, and a suppression hearing was conducted at which Detective Judah testified. The motion was ultimately denied.

At the suppression hearing, Detective Judah was the only witness to testify. He explained that he called Appellant to schedule an interview and Appellant

agreed to come in two days later. During the interview, Detective Judah informed Appellant that the interview was voluntary, that he did not have to participate, and that he could leave at any time. At no time was Appellant under arrest. Following the interview, Appellant left the building. He was not arrested until four days later.

In reviewing a motion to suppress, we first determine whether the factual findings of the trial court are clearly erroneous. *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998). We then review, *de novo*, the application of the law to the facts found. *Id.* At the outset, we conclude that the trial court's findings of fact in this case are supported by substantial evidence; specifically, the uncontested testimony of Detective Judah.

The trial court concluded that Appellant was not in custody for purposes of *Miranda* at the time he gave the interview. *Miranda* warnings are only required when the suspect being questioned is in custody. *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky.2006). "The inquiry for making a custodial determination is whether the person was under formal arrest or whether there was a restraint of his freedom or whether there was a restraint on freedom of movement to the degree associated with formal arrest." *Id.* The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave. *Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky.1999). The United States Supreme Court has identified factors that might suggest that a seizure has occurred and that a suspect is in custody: the threatening presence of several officers; the display of a weapon by an officer; physical touching of the suspect; and the use of tone of voice or language that would indicate that compliance with the

officer's request would be compelled. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

We agree with the trial court's conclusion that Appellant was not in custody during this interview. He had not been arrested and had appeared voluntarily for the interview. *See Lucas*, 195 S.W.3d at 406. He was expressly informed that he was free to end the interview and leave at any time. No other officers appeared in the interview room. Appellant was not handcuffed. When the interview ended, Appellant left the building. In light of these circumstances, a reasonable person would have believed that he or she was free to leave. The trial court correctly concluded that Appellant was not in custody, and the motion to suppress was properly denied.

### Application of Rape Shield Law

Appellant moved the trial court to admit evidence of M.W.'s previous sexual conduct under the "catch-all" provision of KRE 412(b)(1)(C). The trial court declined to hold an evidentiary hearing and denied the motion. However, M.W. was questioned on avowal following submission of the case to the jury.

During this avowal testimony, M.W. discussed the period during which she ran away from home for several months. The abuse by Appellant had stopped before M.W. ran away; however, she did not reveal the abuse to her grandmother until she returned home. While she was away, M.W. testified that she had had sexual intercourse with four men, explaining that she was scared and coerced each time. One of these men involved her in prostitution.

KRE 412(b)(1)(C) permits admission of prior sexual conduct of a victim where it "is directly pertaining to the offense charged." Appellant argues that evidence

of M.W.'s sexual conduct while she was a runaway is relevant to the rape charge because it establishes a motive for M.W. to fabricate her allegations. According to Appellant, M.W. returned home and feared getting in trouble for having run away, perhaps even fearing that she was pregnant or had contracted a sexually transmitted disease during this time. This fear, defense counsel argued, established a motive for M.W. to falsify the allegations and divert attention away from her own wrongdoing.

The purpose of KRE 412 is to protect alleged victims of sex crimes against unfair and unwarranted assaults on their character, particularly the admission of past sexual conduct evidence. The KRE 412 balancing test contains an "obvious tilt toward exclusion over admission." *Commonwealth v. Dunn*, 899 S.W.2d 492, 494 (Ky. 1995) (*citing* Lawson, *The Kentucky Evidence Law Handbook*, § 2.30 (3d ed. 1993)). Even if the evidence in question falls within the exceptions enumerated at KRE 412(b)(1), such evidence may still be excluded if its probative value is outweighed by its prejudicial effect. KRE 403.

We agree with the trial court that this evidence does not directly pertain to the charged offenses, as required by KRE 412(b)(1)(C). During her avowal testimony, M.W. was asked why she waited until after she ran away to reveal the rapes, and she replied that she feared Appellant. It is little more than conjecture to argue that M.W. falsified the allegations to "cover up" the possible consequences of her sexual experiences during the time away from home or to avoid being punished for having run away. Appellant offered no evidence—such as proof that M.W. actually suspected a sexually transmitted disease or a pregnancy—to substantiate this speculative argument. In short, Appellant

failed to establish that M.W.'s sexual behavior several months after she was raped directly pertained to the charges against him. *Cf. Commonwealth v. Young*, 182 S.W.3d 221 (Ky.App.2005) (where defendant claimed sexual encounter was consensual, evidence of victim's predisposition to have sex with him deemed admissible under KRE 401(b)(1)(C)); *Anderson v. Commonwealth*, 63 S.W.3d 135 (Ky.2001) (evidence of victim's previous sexual activity with third parties properly introduced to rebut inference drawn from medical evidence that condition of victim's hymen and vagina was caused by sexual intercourse with defendant).

The exceptions to KRE 412 are to be used "sparingly and carefully." *Violett v. Commonwealth*, 907 S.W.2d 773, 776 (Ky. 1995). The trial court in this case correctly determined that the proposed evidence did not directly pertain to the offenses charged and, therefore, was inadmissible under KRE 412. There was no abuse of discretion. *Id.*

### Bolstering Testimony

 Appellant next argues that the trial court erred when it permitted Valleri Mason to testify regarding an interview with M.W. Defense counsel objected to Mason's testimony before she took the stand, arguing that her testimony would only serve to bolster M.W. and that it lacked any probative value. The trial court overruled the objection and permitted Mason to testify. Upon review, we conclude that Mason did not bolster M.W.'s testimony and, therefore, no error occurred.

Mason is a forensic interviewer with Families and Children First, an independent agency, who interviewed M.W. about the rape allegations. She testified regarding her qualifications, her methods of interviewing children, and M.W.'s demeanor during the interview. Mason did not comment on M.W.'s character for truthfulness,

nor did she give an opinion as to the veracity of M.W.'s claims.

We first note that M.W.'s credibility had been attacked prior to Mason taking the stand. On cross-examination of M.W., defense counsel suggested that someone had "coached" her about what to say. Defense counsel also asked M.W. if she had discussed her testimony with Mason, or if Mason had suggested certain "terms" to use during her testimony. We conclude that Mason's testimony regarding her interview methods was probative and admissible to refute the suggestion that Mason had coached M.W.'s testimony.

Furthermore, no improper bolstering occurred. Mason did not give an opinion as to whether M.W. had been raped, nor did she comment on M.W.'s character for truthfulness. *Cf. Hall v. Commonwealth*, 862 S.W.2d 321, 323 (Ky.1993) (It was clearly improper for therapist to give her opinion as to whether victims "had been sexually abused" and to offer an opinion that victim's testimony "was most likely accurate."). While Mason did testify about M.W.'s demeanor during the interview, she did not compare her demeanor to less credible interviewees. *Cf. Bell v. Commonwealth*, 245 S.W.3d 738, 745 (Ky.2008) (*overruled on other grounds by Harp v. Commonwealth*, 266 S.W.3d 813 (Ky.2008)) ("Clearly implicit in [the social worker's] description of K.T. as 'spontaneous' and 'unrehearsed,' as opposed to alleged victims who sound 'rehearsed' or 'canned,' was her opinion that because of K.T.'s manner of speaking, she was being truthful."). There was no error.

### Jury Instructions

Appellant claims that he was entitled to lesser included instructions of first-degree sexual abuse and third-degree terroristic threatening. Defense counsel tendered jury instructions on both theories, thus preserving the issue for appellate review. The trial court denied both instructions.

Due process requires a lesser-included offense instruction "only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky.1998). We review the trial court's rulings with respect to jury instructions for abuse of discretion. *Ratliff v. Commonwealth*, 194 S.W.3d 258, 274 (Ky.2006).

As it pertains to this case, KRS 510.040 defines rape in the first degree as "engag[ing] in sexual intercourse with another person who ... is less than twelve (12) years old." Sexual abuse in the first degree, as applied to this case, occurs when a person "subjects another person to sexual contact who ... is less than twelve (12) years old." KRS 510.110(1)(b)(2). An instruction on first-degree sexual abuse is, therefore, appropriate when there is evidence that sexual intercourse—i.e., penetration—did not occur. *See* Cooper and Cetrulo, *Kentucky Instructions to Juries, Criminal* § 4.24 (5th ed. 2008).

M.W. testified as to three instances when Appellant raped her. Her testimony was unequivocal that his penis was inserted into her vagina, and Appellant did not take the stand or otherwise offer evidence to controvert this testimony. M.W. also gave brief testimony regarding an instance at her grandmother's house during which Appellant removed her clothing and touched her vagina. When asked if she was raped on this occasion, she said no.

In order to warrant a sexual abuse instruction, the evidence would have to leave doubt as to whether Appellant raped M.W.—that is, whether he penetrated her

vagina—on a single occasion. Here, M.W.'s testimony was unequivocal about what transpired during each instance. On the occasions that Appellant raped M.W., there was no evidence that he did not penetrate her vagina. And on the instance when M.W. testified that Appellant touched her vagina, there was no evidence from which to conclude that he, in fact, raped her. This testimony does not warrant a sexual abuse instruction because it does not create a reasonable doubt that Appellant raped M.W. on the three occasions which she identified. Rather, it simply represents a separate occasion of uncharged conduct that is independent to the instances of rape. There was no error.

Appellant also claims he was entitled to an instruction on terroristic threatening in the third degree as a lesser included offense of intimidating a participant in the legal process. A lesser included offense is one which "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." KRS 505.020(2)(a). "[I]f the lesser offense requires proof of a fact not required to prove the greater offense, then the lesser offense is not included in the greater offense, but is simply a separate, uncharged offense." *Colwell v. Commonwealth*, 37 S.W.3d 721, 726 (Ky. 2000).

As would be applied to the facts of this case, a person is guilty of terroristic threatening in the third degree when "he threatens to commit any crime likely to result in death or serious physical injury to another person or likely to result in substantial property damage to another person." KRS 508.080(1)(a). As instructed in this case, a person is guilty of intimidating a participant in the legal process when

by use of physical force or a threat directed to a person he believes to be a participant in the legal process, he or she hinders, delays, or prevents the communication to a law enforcement officer or judge of information relating to the possible commission of an offense or a violation of conditions of probation, parole or release pending judicial proceedings.

KRS 524.040(1)(f).

Terroristic threatening in the third degree requires proof of a threat to commit a crime likely to result in death or serious physical injury. Conversely, intimidation of a participant in the legal process does not require proof of such a threat; rather, it requires proof simply that physical force or a threat of any nature be used. Terroristic threatening in the third degree is, therefore, not a lesser included offense of intimidating a participant in the legal process.

Appellant emphasizes that the evidence presented in this case would support a finding of guilt on a terroristic threatening charge. However, "[t]he fact that the evidence would support a guilty verdict on a lesser uncharged offense does not establish that it is a lesser included offense of the charged offense." *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky.1998). As third-degree terroristic threatening is not a lesser included offense of intimidating a participant in the legal process, Appellant was not entitled to such an instruction. There was no error.

### Photographic Evidence

Appellant argues that the trial court erred when it permitted the Commonwealth to introduce, during her testimony, a photograph of M.W. when she was about eight years old. M.W. testified that the rapes began when she was about eight years old. She was fourteen years old at the time of trial. The trial court allowed introduction of the photograph, over de-

fense objection. Appellant now claims the photographs were unduly prejudicial, as there was no need to humanize a live, testifying victim.

■ This Court reviews errors in the admission of evidence for an abuse of discretion. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). This Court has repeatedly affirmed the use of photographs of a homicide victim to demonstrate to the jury that the victim was a person, not a mere statistic. *See, e.g., Fields v. Commonwealth*, 274 S.W.3d 375, 410 (Ky.2008). Under the circumstances of this case, we believe that the photograph was properly admitted. Physically, children develop tremendously from year to year. The photograph used here illustrated to the jury how the child victim appeared six years earlier, when the crimes occurred. The photograph was also relevant to M.W.'s assertion that she did not disclose the rapes to an adult earlier because she was afraid of Appellant, who was bigger than she was. The brief display of the single photograph was not excessive or overly prejudicial. *See Hilbert v. Commonwealth*, 162 S.W.3d 921, 927 (Ky.2005) (considering length of display of victim's photograph in determining prejudicial effect). The trial court did not abuse its discretion by allowing its introduction.

### Reference to M.W.'s Interview with Mason

■ During opening statements, the Commonwealth informed the jury that Mason interviewed M.W., and that M.W. told her what had happened. The Commonwealth then stated that the interview was video recorded and used by counsel to prepare for trial, but that the recording would not be played because it "is what we call hearsay." Appellant now claims that he was deprived of a fair trial by this reference to excluded evidence.

This error is not preserved for appellate review, and Appellant requests palpable error review. RCr 10.26. "An error must seriously affect the 'fairness, integrity, or public reputation' of a judicial proceeding in order to be considered palpable under RCr 10.26." *Page v. Commonwealth*, 149 S.W.3d 416, 422 (Ky.2004) (*quoting U.S. v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006).

Assuming arguendo that the reference to the recording was error, we find no indication that a manifest injustice occurred. The fact that M.W. was interviewed by Mason was discussed extensively at trial. Defense counsel cross-examined M.W. about the interview and various statements she made to Mason. Detective Judah referenced the interview and the fact that he watched the interview take place via closed circuit television. He also mentioned that the interview was recorded absent defense objection. Mason likewise testified that the interview was recorded, again without defense objection, and was asked questions based on a transcript of the interview.

In light of the repeated reference to the recording of the interview, we discern no manifest injustice resulting from the Commonwealth's statement to the jury that the recording was excluded because it contained hearsay. We emphasize that the Commonwealth did not reference any of the recording's content, simply the fact that the interview was recorded. *Cf. Parker v. Commonwealth*, 241 S.W.3d 805, 808–09 (Ky.2007) (holding error where re-

cording, which was later deemed inadmissible, was played during opening statement). Even if this reference was absent from the Commonwealth's opening statement, we do not believe there exists any probability that Appellant would have been acquitted of raping M.W. Nor do we believe that Appellant's due process rights were infringed upon by the Commonwealth's explanation as to why the recording was not played for the jury.

### Ex Post Facto Application of KRS 532.110(1)(d)

We now turn to Appellant's argument with respect to his plea of guilty to one count of rape against J.A. As stated above, in exchange for his guilty plea, Appellant was sentenced to imprisonment for ten years. He reserved the right to appeal the sentence.

■ Appellant argues that the trial court erred when it applied KRS 532.110(1)(d) to his two sentences for rape in the first degree. He argues that the statute's application to his case is in violation of the ex post facto clause of the United States Constitution.

KRS 532.110(1)(d) provides: "The sentences of a defendant convicted of two (2) or more felony sex crimes, as defined in KRS 17.500, involving two (2) or more victims shall run consecutively." Subsection (1)(d) became effective July 12, 2006. Between 2001 and 2004, when the rapes of M.W. and J.A. occurred, no such provision existed and the trial court enjoyed the discretion to run applicable sentences concurrently or consecutively. Indeed, though ultimately concluding KRS 532.110(1)(d) had retroactive application, the trial court stated it would have otherwise ordered the sentences to run concurrently.

■ Both the Kentucky Constitution and the United States Constitution prohib-

it ex post facto laws. *See* Ky. Const. § 19 and U.S. Const. Art. I, § 9, cl. 3. An ex post facto law is one that alters the definition of a crime or "one that inflicts a greater punishment than the law annexed to the crime when it was committed." *Lozier v. Commonwealth*, 32 S.W.3d 511, 513 n. 1 (Ky.App.2000). In determining whether application of a law violates the ex post facto prohibition, our case law requires that we first determine whether it is retrospective. *Purvis v. Commonwealth*, 14 S.W.3d 21, 23 (Ky.2000). In this case, we next determine whether the law inflicts a greater punishment than the law existing at the time of the offense. *Id.*

The first hurdle has been surmounted in this case. KRS 532.110(1)(d) became effective July 12, 2006. The crimes against J.A., M.W., and M.J.W. occurred between 2001 and 2004. Accordingly, the law was applied retroactively in Appellant's case.

We thus turn to the question of whether KRS 532.110(1)(d) increased Appellant's punishment. The Commonwealth urges that the application of KRS 532.110(1)(d) to Appellant does not increase the punishment because the possibility of consecutive sentences existed prior to the enactment of that subsection. The Commonwealth also points out that the allowable term of the underlying sentences remains unchanged. Conversely, Appellant argues that subsection (1)(d) does, in fact, inflict a greater punishment because it removes the possibility of concurrent sentences by essentially rendering what was previously a maximum sentence, a required sentence.

The United States Supreme Court has explained that a law violates the ex post facto prohibition when it "stiffen[s] the standard of punishment applicable to crimes that have already been committed." *California Dept. of Corrections v. Morales*, 514 U.S. 499, 505, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). In *Lindsey v. Wash-*

*ington,* the Court held for the first time that "the ex post facto clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed." 301 U.S. 397, 401, 57 S.Ct. 797, 81 L.Ed. 1182 (1937). In *Lindsey,* the sentencing scheme at the time of the petitioners' crimes permitted the trial court to impose an indeterminate sentence up to fifteen years. Prior to sentencing, however, a new statute required the trial court to impose the maximum sentence of fifteen years. Despite the fact that a fifteen-year sentence was possible under both the old and new statute, the Court concluded that application of the new scheme violated the ex post facto clause because "the measure of punishment prescribed by the later statute is more severe than that of the earlier." *Id.*

*Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) and *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), both applied the *Lindsey* principle that the ex post facto clause prohibits the state from later enhancing the measure of punishment to an existing crime. In *Weaver,* the Court held unconstitutional the application of a statute that reduced the amount of automatic "gain time" credits available to prisoners, effectively eliminating the lower end of the possible range of prison term. In *Miller,* the statutorily mandated "presumptive sentence range" was amended after the petitioner's crime but before his sentencing, increasing the maximum allowable sentence from five and a half years to seven years. The Court determined that application of the later statute was prohibited by the ex post facto clause because it made "more onerous the punishment for crimes committed before [the statute's] enactment." 482 U.S. at 435, 107 S.Ct. 2446.

The Court of Appeals followed the reasoning in *Lindsey* in *Wethington v. Com-*

*monwealth,* 549 S.W.2d 530 (Ky.App.1977). There, the defendant committed his crimes prior to the enactment of KRS 533.060(2), which makes a person ineligible for concurrent sentencing on a subsequent offense when that offense is committed during a period of parole, probation, shock probation, or conditional discharge. The defendant was sentenced, however, after the effective date of KRS 533.060(2), and the trial court ordered consecutive sentences, concluding that such was required by the new statute. Following *Lindsey,* the Court of Appeals concluded that application of the statute violated the ex post facto clause because the "new standard of punishment adopted by KRS 533.060 is more onerous than the old statute." 549 S.W.2d at 532. "While the old statute left to the discretion of the trial judge eligibility for probation and running of sentences, the new statute completely denies eligibility for probation and commands that the period of confinement may not run concurrently with any other sentence." *Id.*

We find *Wethington* and *Lindsey* to be analogous to the present case. As in *Wethington,* the amended version of KRS 532.110(10(d)) denies the trial court the opportunity to consider concurrent sentences for crimes committed before the effective date of the subsection. The Commonwealth, however, argues that the U.S. Supreme Court has effectively overruled *Lindsey,* which was heavily relied upon in *Wethington,* and asks this Court to overrule *Wethington.* We disagree.

As this Court explained in *Martin v. Chandler,* the U.S. Supreme Court has addressed confusion surrounding the second prong of the ex post facto inquiry; that is, whether the change in law increases the punishment for a crime. 122 S.W.3d 540 (Ky.2003). "In reliance upon dicta found in *Weaver v. Graham,* this inquiry has, at times, been articulated in

terms of whether an offender has been somehow 'disadvantaged' by a change in the law after the crime was consummated." 122 S.W.3d at 547. The "disadvantaged" language, first appearing in *Kring v. Missouri*, 107 U.S. 221, 228–29, 2 S.Ct. 443, 27 L.Ed. 506 (1883), was relied upon in *Lindsey, Weaver,* and *Miller,* and has been cited by Kentucky courts. *See Purvis v. Commonwealth,* 14 S.W.3d 21, 23 (Ky. 2000). In *Collins v. Youngblood,* the U.S. Supreme Court overruled *Kring* and expressly rejected the "disadvantaged" language, explaining that the case "should not be read to mean that the Constitution prohibits retrospective laws ... which alter the situation of a party to his disadvantage." 497 U.S. 37, 49–50, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

While it is true that *Collins* expressly overruled *Kring,* the Commonwealth is incorrect in its assertion that *Collins* undermines the validity of the holdings in *Lindsey, Weaver,* and *Miller.* The U.S. Supreme Court explained in *Morales:*

> Our opinions in *Lindsey, Weaver,* and *Miller* suggested that enhancements to the measure of criminal punishment fall within the *ex post facto* prohibition because they operate to the "disadvantage" of covered offenders. But that language was unnecessary to the results in those cases and is inconsistent with the framework developed in *Collins v. Youngblood.* After *Collins,* the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor, as the dissent seems to suggest, on whether an amendment affects a prisoner's "*opportunity* to take advantage of provisions for early release" but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable. (Internal citations omitted.)

514 U.S. 499 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

Because it ultimately focuses on the increased punishment, the Court of Appeals' holding in *Wethington* is equally valid, though also citing the "disadvantaged" language of *Lindsey* and *Kring. See Martin,* 122 S.W.3d at 548 (reaffirming the holding in *Purvis* despite its use of the "disadvantaged" language). Thus, we reject the Commonwealth's request to overrule *Wethington.*

Accordingly, we conclude that application of KRS 532.110(1)(d) to Appellant's sentencing is prohibited by the ex post facto clause. By removing the possibility of concurrent sentences, subsection (1)(d) creates a new standard of punishment that is more onerous than the old statute. As in *Lindsey* and in *Wethington,* the new statute makes mandatory what was previously the maximum sentence. The trial court erred in applying the statute to Appellant's sentencing. We, therefore, remand this case for a new sentencing hearing to be conducted in accordance with this opinion.

For the foregoing reasons, the judgment of the Jefferson Circuit Court as to the counts involving the rape of M.W. (06–CR–002483–001) and the intimidation of a participant in the legal process (06–CR–002483–003) is affirmed. Appellant's judgment as to the count involving the rape of J.A. (06–CR–002483–002) is remanded to the Jefferson Circuit Court for a new sentencing hearing.

MINTON, C.J.; ABRAMSON, NOBLE and SCOTT, JJ., concur. SCHRODER, J., concurs in result only by separate opinion, in which NOBLE, J., joins.

SCHRODER, J., concurring in result only.

I believe that Mason's testimony improperly vouched for M.W.'s credibility.

As in *Bell*, although Mason did not explicitly state that M.W. was truthful, implicit in her testimony was that M.W.'s demeanor indicated that she was telling the truth. However, in light of the eyewitness testimony of M.J.W., I believe the error was harmless.

NOBLE, J., joins.