RENDERED: MARCH 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0298-MR

DEVON WADE                                                   APPELLANT

|  |  |  |
|---|---|---|
|  | APPEAL FROM HOPKINS CIRCUIT COURT | |
| v. | HONORABLE CHRISTOPHER BRYAN OGLESBY, JUDGE | |
|  | ACTION NO. 23-CR-00050 | |

COMMONWEALTH OF KENTUCKY                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, ECKERLE, AND MOYNAHAN, JUDGES.

ECKERLE, JUDGE: Appellant, Devon Wade ("Wade"), seeks review of the Order of the Hopkins Circuit Court, which was entered January 3, 2025, denying his motion to withdraw his guilty plea to six felony offenses. Wade bases his claims on original defense counsel's failure to review the entire, very large body of digital evidence in possession of the Kentucky State Police. For the reasons set forth in this decision, and after careful review, we affirm.

On February 14, 2023, the Hopkins County Grand Jury indicted Wade on charges of First-Degree Rape, First-Degree Sodomy, and four counts of the Use of a Minor in a Sexual Performance, Victim under the Age of 16. At his arraignment in Hopkins Circuit Court on February 16, 2023, Wade was represented by private counsel, James F. Greene ("Greene").

On January 11, 2024, the case underwent criminal mediation, at which Wade, Greene, and the Commonwealth negotiated a plea deal. Pursuant to its terms, Wade would be allowed to concede evidence sufficient to prove his guilt, while maintaining his professed innocence, under *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970),[1] to the original charges of First-Degree Rape and First-Degree Sodomy. Wade would also enter what is often called a "straight" guilty plea to the amended charges of Distribution of Matter Portraying the Sexual Performance of a Minor, First Offense, on four counts. In return, the Commonwealth agreed to recommend a substantially-reduced, total sentence of 15 years on all charges, to run concurrently. Pursuant to statutory requirements, the Commonwealth informed Wade that he would be required to

---

[1] An *Alford* plea "permits a conviction without requiring an admission of guilt and while permitting a protestation of innocence." *Wilfong v. Commonwealth*, 175 S.W.3d 84, 103 (Ky. App. 2004).

serve 85 percent of that sentence before he would become eligible for parole, and that he would be required to register as a sex offender for life.

The same day, Wade appeared before the Trial Court for a plea colloquy in accordance with *Boykin v. Alabama*, 395 U.S. 238, 241-42, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969). During the hearing, the Trial Court asked numerous questions of Greene, Wade, and the Commonwealth to confirm that Wade's participation in mediation had been voluntary; that Wade believed that he was treated fairly by all attorneys involved in the mediation; that Greene believed that the plea deal was in Wade's best interests; and that Wade wished to plead guilty after conferring with Greene regarding the consequences of the plea, the possible defenses that could be raised at trial, and the rights that he would waive as a result of the *Alford* and guilty pleas. After finding that Wade knowingly and voluntarily made his pleas, the Trial Court accepted them and set a sentencing date in March 2024.

However, by the time of the sentencing hearing, Wade had discussed his case with other incarcerated inmates and developed a different plan. Greene then moved to withdraw as counsel based on Wade's stated desire to withdraw his guilty pleas pursuant to Kentucky Rule of Criminal Procedure ("RCr") 8.10. Greene stated that he believed that he had an ethical duty to withdraw as counsel based on his understanding that representing Wade on the motion to withdraw

-3-

would be a conflict of interest. He confirmed that he had negotiated the plea deal in good faith, and that he believed that Wade had knowingly and voluntarily accepted. The Trial Court approved the motion and appointed the Department of Public Advocacy as conflict counsel. Kenneth Root ("Root") subsequently entered his appearance as counsel for Wade.

Root later maintained that the primary issue in advising Wade on continuing with a motion to withdraw the guilty pleas would be the existence of a large body of unreviewed, digital evidence held by the Kentucky State Police Crime Lab ("Crime Lab"). Both the Commonwealth and Root agreed that the evidence could not be made fully discoverable through traditional means due to the inclusion of child-sex-abuse material ("CSAM") contained in the imaging of cell phones belonging to Wade and the alleged, minor victim, who was identified in the Trial Record as "C.M." Although sanitized versions of several social-media accounts were provided in full to Root, technicians could not successfully sanitize and copy all of the cell phone data. Vast amounts of that data did not involve Wade or his charges, and the Commonwealth was not obligated to produce it. Nonetheless, the original evidence was made available for review by the defense. These efforts at discovery were the subject of several conversations among the Commonwealth, the investigating officer on the case, defense counsel, and the

Court.  This evidence was ultimately and specifically made available for Root to review in November 2024 over the course of two days at the Crime Lab.

Once he had reviewed a majority of the digital evidence held at the Crime Lab, Root filed a motion on Wade's behalf to withdraw his guilty pleas, and the Trial Court scheduled an evidentiary hearing for December 4, 2024.  At that hearing, the Trial Court heard testimony from Greene; investigating officer, Detective Lloyd Ray ("Ray"); forensic examiner, Jordan Frazier with the Crime Lab; and Wade.  Wade testified that the only specific item he had not seen previously was a Twitter screenshot of a message where C.M. mentioned going to a college after picking up her sister.

Both Root and the Commonwealth offered brief oral arguments for and against the motion.  Although Root raised Greene's failure to review the digital evidence as an error that affected Wade's ability to make a knowing and intelligent plea, he stopped short of directly asserting ineffective assistance of counsel.  Meanwhile, the Commonwealth argued that it had met its discovery burdens in making evidence available for review and discussing all evidence directly related to the charged offenses with Greene prior to the plea.

Following the hearing, the Trial Court issued an order denying the motion and proceeded to sentencing.  In the order, the Trial Court set forth a detailed recitation of the findings of fact and applicable law for determining

-5-

whether a defendant should be allowed to withdraw a guilty plea. Ultimately, the Trial Court concluded:

> This judge also finds now that the plea was still made knowingly, intelligently, and voluntarily, and there is no just reason to allow its withdrawal as all the attorneys in this case (including Mr. Greene) had equal access to all the discovery with a fair opportunity to view all discovery (including CSAM and an apparent screenshot of a twitter communication that the victim was in college). The fact that Detective Ray was unable to acquire other social media account records is not relevant to this courts [sic] inquiry as there is no evidence that the Commonwealth was ever in possession of those account records and it is clear from Detective Ray's testimony that those records were never part of the Commonwealth's discovery in this case. While it is incumbent on the Commonwealth to provide defense counsel with any exculpatory evidence knowingly in its possession, the Commonwealth is not required to investigate every possible defense for the defendant or track down every social media account record that the defendant believes may be "missing" from the discovery.

Record ("R.") at 305-6. The Trial Court further noted that Wade expressed no hesitancy or confusion in his plea.

Although the Trial Court focused its final analysis on the duty of the Commonwealth to provide exculpatory material in discovery, this issue was not the one raised by Wade in the original motion to withdraw his guilty plea and advanced by Root at the evidentiary hearing. Instead, Wade argued to the Trial Court that his guilty plea could not be considered knowing and voluntary due to Greene's failure to review the full quantity of digital evidence held at the Crime

Lab and to conduct further investigation into possible defenses based on that unreviewed evidence. Again, we note that this argument did not go so far as to explicitly claim ineffective assistance of counsel. Accordingly, the Trial Court's Order remained similarly silent in addressing the elements for ineffective assistance of counsel, as that claim was not directly argued to that Court.

On appeal, however, Wade fully advances the argument that his guilty plea should be considered invalid due to ineffective assistance of counsel in failing to investigate and identify additional, potential defenses prior to the mediation and plea negotiations. Although the Appellant's Brief quotes the relevant portion of the Trial Court's Order, Wade neglected to address the Trial Court's failure to rule on his current, primary argument that Greene provided ineffective assistance through failure to investigate all of the Crime Lab's evidence. While Wade offered significant commentary about the testimony at the evidentiary hearing, he offered minimal argument addressing the Trial Court's analysis, findings, and conclusions in this case.

In reviewing an order denying a defendant's motion to withdraw a guilty plea, the Court of Appeals reviews the Trial Court's findings of fact only for clear error, while its "application of legal standards and precedents" is reviewed *de novo*. *Zapata v. Commonwealth*, 676 S.W.3d 390, 394 (Ky. 2020) (citing

*Commonwealth v. Pridham*, 394 S.W.3d 867, 874 (Ky. 2012)).  In *Zapata*, our

Supreme Court explained:

> "If the trial judge's findings of fact in the underlying
> action are not clearly erroneous, *i.e.,* are supported by
> substantial evidence, then the appellate court's role is
> confined to determining whether those facts support the
> trial judge's legal conclusion."  *Commonwealth v.
> Deloney*, 20 S.W.3d 471, 473–74 (Ky. 2000).  "Mere
> doubt as to the correctness of a finding would not justify
> reversal, and the appellate court does not consider and
> weigh evidence de novo.  However, if a finding is
> without adequate evidentiary support . . ., the reviewing
> court may regard it as clearly erroneous."
> *Commonwealth v. Harrelson*, 14 S.W.3d 541, 548–49
> (Ky. 2000).

676 S.W.3d at 394.

Where an appellant has alleged an invalid plea due to ineffective

assistance of counsel, our Supreme Court has directed the following:

> A showing that counsel's assistance was ineffective in
> enabling a defendant to intelligently weigh his legal
> alternatives in deciding to plead guilty has two
> components: (1) that counsel made errors so serious that
> counsel's performance fell outside the wide range of
> professionally competent assistance; and (2) that the
> deficient performance so seriously affected the outcome
> of the plea process that, but for the errors of counsel,
> there is a reasonable probability that the defendant would
> not have pleaded guilty, but would have insisted on going
> to trial.

*Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001) (quoting *Sparks v.*

*Commonwealth*, 721 S.W.2d 726, 727-28 (Ky. App. 1986)).  A defendant wishing

-8-

to withdraw a guilty plea "must allege facts that, if proven, would support a conclusion that the decision to reject the plea bargain and go to trial would have been rational, *e.g.*, valid defenses, a pending suppression motion that could undermine the prosecution's case, or the realistic potential for a lower sentence." *Commonwealth v. Thompson*, 548 S.W.3d 881, 894 (Ky. 2018).

Here, Wade's failure to raise directly the question of ineffective assistance of counsel frustrated the Trial Court's review and resulted in an Order that did not clearly address the proper legal standards and precedents associated with that claim. His reticence to confront initial counsel below significantly undermines his current claims on appeal. Had Wade properly raised the issue of whether Greene's performance could be considered ineffective assistance of counsel, as he attempts to do now for the first time, the Trial Court's order could have addressed the relevant factors in a more comprehensive manner. Nonetheless, the Order does adequately address the necessary elements of this claim to allow this Court to review the Trial Court's findings for abuse of discretion in the absence of more particular application of the law.

On appeal, Wade explicitly alleges that Greene did not provide services within the range of professionally competent assistance because of his failures to: (1) obtain a full, sanitized copy of all social media accounts and both phones, and alternatively (2) travel to the Crime Lab to review the full, unredacted

versions. In other words, Wade alleges that Greene failed in his duty to investigate the evidence and the potential defenses that might arise. However, in so doing, Wade ignores the existing, undisputed, and critical evidence that Greene flatly informed Wade that he had not reviewed all of the evidence; and Wade chose to proceed forward with the agreement anyway. We will not turn a blind eye to these facts on appeal.

Our Supreme Court has held "that counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary under all the circumstances[.]" *Haight v. Commonwealth*, 41 S.W.3d 436, 446 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). "A reasonable investigation is not an investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources, but also with the benefit of hindsight, would conduct." *Id.* (citing *Thomas v. Gilmore*, 144 F.3d 513 (7th Cir. 1998)). Rather, the question is more appropriately tailored to "whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527, 123 S. Ct. 2527, 2538, 156 L. Ed. 2d 471 (2003).

In this case, there is no question that Greene never reviewed the entirety of the Crime Lab's evidence, which is undisputedly voluminous and includes significant numbers of messages, screenshots of messages, and other

communications that largely contain no reference to the indicted offenses. The question is instead whether Greene reasonably decided not to conduct further investigation in light of all the facts in this case.

While not explicitly addressing this question, the Trial Court's Order does include findings of fact directly based upon Greene's testimony that he had reviewed the evidence that the Commonwealth intended to introduce at trial. The Order also notes that Greene testified that this evidence alone informed his professional opinion that a plea deal would offer the best outcome for Wade. Further review of the underlying record shows that Greene indicated that he had explored Wade's contention that he had been misled as to C.M.'s age, testifying that he had requested specific material related to C.M.'s representation of her age on social-media posts and in conversations with Wade. He testified that he had particularly requested from Ray additional, social-media account records whenever Wade identified an account as being missing from the provided discovery. Green emphatically described an ongoing process of requesting, reviewing, and identifying new evidence as it came to light.

Critically, Greene testified that he did not believe that any of the very damning evidence that he had reviewed or of which he had been informed, if admitted at trial, would likely lead to a lesser sentence than that offered; rather, it would potentially lead to a far greater sentence for Wade. Indeed, Wade faced a

-11-

70-year sentence at trial, and the evidence the Commonwealth planned to introduce in support of the indictment was graphic in its culpability. Greene confirmed that it was his professional opinion that Wade should avoid a jury trial, that he had participated in mediation on Wade's behalf to negotiate a plea deal as a result of that opinion, and that he had communicated this advice to Wade in recommending he accept the plea offer. Our review has not uncovered any convincing evidence from Wade that Greene did not make a reasonable, professional decision that further investigation of the Crime Lab's evidence was unnecessary as it would not change the probable outcome and Greene's strategy and advice based upon that likelihood.

Furthermore, Wade also failed to establish the required element that he must show that this lack of investigation actually prejudiced his decision to accept the plea offer. On appeal, Wade offers no argument that exculpatory evidence had been withheld. Instead, he identifies only speculative suggestions that further investigation might have benefitted him at trial. This showing, or rather lack thereof, falls far short of the burden that an appellant must meet when asserting that his prior decision to plead guilty should be adjudged invalid due to ineffective assistance of counsel. As noted in *Thompson*, some of the facts that would support a rational decision to reject a plea offer and go to trial would include the existence of valid defenses or the realistic potential for a lower sentence. 548

S.W.3d at 894. This strategy is consistent with our cases addressing ineffective assistance of counsel, which note that "counsel cannot be ineffective for failing to raise an unmeritorious argument" or one that has only "uncertain viability." *Fowler v. Commonwealth*, 634 S.W.3d 605, 614, 615 (Ky. App. 2021).

During the plea colloquy, Greene confirmed to the Trial Court that he had discussed potential defenses to the charges with Wade. He did not offer any statement of what those defenses might have been, and he was not required to do so. However, the plea colloquy was without question one of Wade's many opportunities to talk to the Trial Court about the evidence against him. Testimony and other appearances by Greene before the Trial Court suggest that the primary defense that he contemplated was that Wade had a genuine lack of knowledge of C.M.'s true age at the time of the alleged assault. At the evidentiary hearing, Wade suggested for the first time that knowledge of the additional evidence reviewed by Root would have induced him to reject the plea offer, as it supposedly gave rise to additional defenses that were unknown to him at the time of the mediation.

In its order, the Trial Court expressly noted that Wade had asserted that he had been provided with new information by Root of which he had been unaware before entering his plea. In the face of those statements, which the Trial Court concluded were unsubstantiated, it stated: "No specifics were given as to

-13-

what that information was, where it was obtained, or how it would have impacted his decision to plea rather than go to trial." R. at 304.

Wade did attempt, improperly, to solicit information about C.M.'s other sexual encounters. At the evidentiary hearing, the Trial Court sustained the Commonwealth's objections to Root's questioning regarding C.M.'s communications with other persons, particularly to inquiries of interactions of a sexual nature with persons other than Wade. And given her young age, consent was not going to be an arguable point in this case. Although Root's attempted questioning suggests one point that he may have intended to argue, he did not articulate this supposed defense to the Trial Court even in a sidebar conversation regarding the objected line of questioning. Video Record ("V.R.") at 9:14:20-9:15:00. He thus made no record on this issue, and it was his burden to do so. His decision thwarted the Trial Court's ability to review an alleged defense. However, it is unlikely that a clearer articulation below would have changed the outcome of this case, as the arguments suggested on appeal could best be characterized as having "uncertain viability" even if properly raised. *See Fowler*, 634 S.W.3d at 615.

First, Wade's briefs identify conversations with other men and social media posts found on C.M.'s phone that could have led Wade to believe that she was older than her 14 years at the time he began interacting with her. Notably,

though, Greene testified that he had specifically requested any material having to do with C.M.'s asserted age in his discovery requests and conversations with Ray. Moreover, no specific evidence has been identified by any party that clearly shows that C.M. misrepresented her age online. More importantly, Wade has not claimed that these communications would show that C.M. misrepresented her age *to Wade*. Accordingly, there is no indication that further review of the evidence by Greene would have changed his professional opinion regarding the viability of this defense. And questioning as to the minor victim's prior sexual history is of course unavailing, as discussed below.

Second, Wade infers that the conversations between C.M. and other men would affect the credibility of her statements regarding the facts underlying the rape and sodomy charges at trial. Because C.M. was over the age of 12 at the time that the alleged offenses occurred, the charge of First-Degree Rape relied on her statement that the sexual acts had been forced on her by Wade. If a jury did not find her testimony entirely credible on the element of forcible compulsion, Wade could instead have been found guilty of the lesser included offense of Third-Degree Rape based solely on the fact that C.M. was under 16 at the time the offense occurred.

However, there is a significant flaw in this avenue of defense. Although the Appellant's Brief cites to multiple Kentucky Rules of Evidence

("KRE") regarding the credibility of a witness's testimony, it fails to address the necessary application of KRE 412. This rule states that evidence is generally inadmissible in criminal proceedings involving alleged sexual misconduct if it is offered to prove that any alleged victim engaged in other sexual behavior or to prove any alleged victim's sexual predisposition. KRE 412(a). Exceptions apply only to specific sexual behavior that would provide an alternate source of physical evidence, prove consent due to prior sexual contact between the victim and the accused, or any other evidence directly pertaining to the offense charged. KRE 412(b)(1). Regardless, "[e]ven if the evidence in question falls within the exceptions enumerated [in] KRE 412(b)(1), such evidence may still be excluded if its probative value is outweighed by its prejudicial effect." *Cecil v. Commonwealth*, 297 S.W.3d 12, 17 (Ky. 2009) (citing KRE 403). Our Supreme Court has confirmed that KRE 412 applies to minors as well as adults and has barred the admission of similar evidence of a victim's sexual communications that "posed a substantial threat of casting [the victim's] character in a bad light and distracting the jury from the real issues in the case, the principal evils which KRE 412's shield is intended to avoid." *Montgomery v. Commonwealth*, 320 S.W.3d 28, 43 (Ky. 2010).

At the evidentiary hearing, the Commonwealth repeatedly objected to any mention of C.M.'s other communications. The Trial Court consistently

sustained these objections and indicated during the sidebar conversation that it would not permit this line of questioning even at the evidentiary hearing. As Wade has still offered no argument as to any manner by which the probative value of this evidence would allegedly outweigh the clear prejudice to the victim, the Trial Court's intended exclusion remains proper. Without any viable defense offered by the additional evidence, Wade's suggestions as to an argument fall apart. Accordingly, even if Greene's representation had been insufficient, which we do not find, Wade has pointed to no evidence that shows a reasonable probability that Wade would have rejected the plea offer and insisted on going to trial.

Finally, Wade argues on appeal that, even if the entered pleas were found to be valid, the Trial Court erred in refusing to exercise its discretion to allow the withdrawal. On that subject, our Supreme Court explains:

> A plea may be withdrawn if the trial court, in its discretion, permits the withdrawal. The rule makes clear that the trial court may permit the defendant to withdraw even a valid plea. Under our rule, this latter decision is one addressed solely to the trial court's sound discretion. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

*Zapata*, 676 S.W.3d at 403 (citations omitted).

As in *Zapata*, Wade seeks to set aside his guilty plea under guidance from the application of federal rulings holding that "motions to withdraw guilty pleas made before sentencing should be liberally constructed in favor of the

accused and granted freely." Appellant's Brief at 18. However, the Trial Court included in its Order a summary of the evidentiary hearing testimony, a review of the detailed questioning performed at the plea colloquy, and the agreement by all parties that Greene had access to the Commonwealth's discovery specifically underlying the charged offenses prior to mediation and Wade's entrance of guilty pleas in accordance with the plea negotiations. There is no indication that the Court reached its decision arbitrarily or unreasonably, particularly given the greater opportunity of the Trial Court to examine witnesses and assess credibility. *Zapata*, 676 S.W.3d at 402 (citing *Kotas v. Commonwealth*, 565 S.W.2d 445, 447 (Ky. 1978)).

Despite Wade's failure to raise properly the argument of ineffective assistance of counsel before the Trial Court, that Court's findings of facts still adequately refute Wade's more direct arguments of ineffective assistance on appeal. Given the severity of the charges, the nature of the readily-available, undisputedly-condemning evidence that the Commonwealth planned to introduce at trial, and the Commonwealth's repeated objections to any mention of C.M.'s other communications during the evidentiary hearing, the Trial Court's conclusion that there were no grounds to withdraw the guilty plea in this case was supported by sound legal principles and the facts of the case. While Wade's failure to articulate his argument clearly complicated the Trial Court's review, we find that

the Trial Court nevertheless reached the correct conclusion that it was not required to allow the withdrawal of the plea.

Accordingly, we affirm the Trial Court's Order denying Wade's motion to withdraw his guilty pleas pursuant to Kentucky Rules of Criminal Procedure 8.10.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Adam Meyer
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky