[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-14852
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 26, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00290-CR-W-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDIE ANDREW GORDON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(September 26, 2008)**

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Eddie Andrew Gordon appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).

**Facts**

The testimony at trial established the following facts:  On November 22, 2004, Officer Lance Gambrel went to the Coliseum Inn in Montgomery, Alabama, in response to a 911 call from Lynn Jordan wanting assistance in recovering missing property.  When Gambrel arrived at the Coliseum Inn, Jordan told Gambrel that her son, a crack cocaine addict, had broken into her home and taken her property, including a stereo.  She stated that she believed her missing property was in Room 103 of the Coliseum Inn, a room her son frequented.

As Gambrel approached Room 103, the door was ajar and he could see Appellant Gordon lying on the bed watching television.  Gambrel saw a CD case next to Gordon with what appeared to be drugs and drug paraphernalia on top.  Gambrel knocked and Gordon came to the door.  Gambrel asked Gordon if this was his room, to which Gordon responded that it was and that he had been staying there for some time.  When Gambrel asked Gordon to step out of the room, Gordon complied but appeared nervous and was shaking.  Gambrel asked if he could search the room and Gordon agreed.  A back-up officer remained outside with Gordon while Gambrel performed his search.

Once in the room, Gambrel seized the drug evidence which was in plain view. He found drug residue on the CD along with a razor blade and a marijuana "blunt" on the bed where Gordon had been lying. Additionally, Gambrel found a crack pipe and crack cocaine on or near the dresser. There was a towel next to the items on the bed. In the process of seizing the drug evidence, Gambrel moved the towel and found a firearm lying underneath the towel. Gambrel placed Gordon under arrest.[1]

Robert Green, a member of the Alcohol, Tobacco, Firearms, and Explosives task force, testified that he attempted to speak with Gordon after his arrest and release as part of the investigation of the firearm charge. Green went to the Coliseum Inn to speak with Gordon, but because Gordon was not there, Green left a business card in the door of Room 103. Sometime thereafter, Gordon called Green and, in the course of that conversation, Gordon stated that he had obtained the gun from his mother's house about three weeks before the arrest and had been planning to deliver the gun to his brother. Green told Gordon that he needed to speak to Gordon in person regarding the firearm. Gordon responded that he was

---

[1] Prior to trial, Gordon filed a motion to suppress the evidence of the gun. At the hearing, which was held before a magistrate judge, Gordon disputed Gambrel's claim that the door was ajar and that the consent to search was general. Gordon claimed that Gambrel had asked only for consent to search for the stereo. The magistrate judge, however, found Gambrel to be more credible and denied the motion to suppress. Gordon did not object to the magistrate judge's report and recommendation.

out of town at the moment and would contact Green when he returned.

Gordon testified in his own defense. He admitted his prior felony convictions for sodomy, breaking and entering a vehicle, robbery, and drug possession. He denied, however, that the gun was his or that he had known of the gun's existence. His roommate, Tavian Jackson, also testified for Gordon. Jackson stated that the gun was his, that he kept it in the night stand, and that Gordon did not know about the gun.

Gordon objected to Green's testimony about the statements Gordon had made to Green during their telephone conversation. Gordon argued that admitting his statement was a violation of his Fifth Amendment right because Green had not given Miranda[2] warnings before speaking with him on the telephone. The court overruled the objection, finding that Gordon was no longer in custody at the time the statements were made and was speaking to Green voluntarily.

The jury found Gordon guilty. Gordon then filed a post-conviction motion for a new trial and, alternatively, a motion for judgment of acquittal asserting that the evidence was insufficient to establish his prior convictions or that he knowingly possessed the gun. He also reiterated his objection to Green's testimony and his objection to the denial of his motion to suppress the gun

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

evidence.  The court denied the motions.[3]

Following the sentencing, Gordon's counsel moved to withdraw, stating only that Gordon had expressed the desire to be represented by different counsel on appeal.  This court denied the motion, and this appeal followed.

On appeal, Gordon argues error in (1) this court's denial of his motion for new counsel, (2) the district court's denial of his motion to suppress the gun evidence obtained during the search of the hotel room, (3) the district court's allowing Agent Green to testify as to the statement Gordon made regarding the gun, and (4) the district court's denial of Gordon's motions for acquittal and motion for new trial.

## Discussion

*A. Motion for New Counsel*

Gordon argues that this court erred by denying his motion for new counsel because the denial precludes him of the opportunity to raise an ineffective assistance claim on appeal.  Although he notes that such claims are usually raised in collateral attacks, Gordon states that there is no right to counsel in collateral proceedings; thus, by depriving him of new counsel to argue ineffective assistance on this direct appeal, he contends the court effectively denies Gordon the

---

[3] The judge also denied a motion for acquittal that Gordon filed at the close of the Government's case but upon which the judge reserved ruling.

opportunity to raise the issue.

We review constitutional claims de novo. Battle v. United States, 419 F.3d 1292, 1300 (11th Cir. 2005). Although the "root meaning" of the Sixth Amendment affords an accused his choice of counsel, it is well established that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." United States v. Gonzalez-Lopez, 548 U.S. 140, 147-152 (2006); see also Morris v. Slappy, 461 U.S. 1 (1983) (holding that while an indigent criminal defendant has an absolute right to be represented by counsel, he does not have a right to have a particular lawyer represent him).

Here, Gordon's counsel was appointed. Accordingly, Gordon does not have a right to select his counsel for this stage of the litigation. See Gonzalez-Lopez, 548 U.S. at 152. Furthermore, Gordon has failed to establish how the denial of his motion for new counsel violates his rights. As Gordon explains, he seeks new counsel in order to raise ineffective assistance claims on appeal. This court has repeatedly held that such claims are generally not appropriate on direct appeal because the record is not sufficiently developed. See United States v. Gholston, 932 F.2d 904, 905 (11th Cir. 1991). Rather, claims of ineffective assistance of counsel generally arise in post-conviction motions under 28 U.S.C. § 2255. The fact that Gordon is not entitled to counsel in post-conviction motions does not

6

result in a violation of his Sixth Amendment right on direct appeal.  For these reasons, we properly denied Gordon's motion for new counsel on appeal.

*B. Motion to Suppress*

Gordon next contends that the district court erred by failing to suppress the gun evidence because Gambrel conducted a search that exceeded the scope of the consent.  In considering the district court's denial of a motion to suppress, we review factual determinations for clear error and review the application of law to the facts de novo, construing all facts in the light most favorable to the Government.  United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003).  Because Gordon failed to object to the magistrate judge's recommendation, the magistrate judge's factual findings are "not subject to attack on appeal 'except on grounds of plain error or manifest injustice.'"  United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).  "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."  United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).

The Fourth Amendment provides protection against unreasonable searches and seizures.  U.S. CONST., amend. IV.  Searches and seizures conducted inside a home without a warrant are presumptively unreasonable.  United States v.

7

McGough, 412 F.3d 1232, 1237 (11th Cir. 2005).  Nevertheless, even in the absence of probable cause or reasonable suspicion, law enforcement officers may search an individual or his property without a warrant, so long as the individual voluntarily consents to the search.  Schneckloth v. Bustamonte, 412 U.S. 218, 219-22 (1973).

"A consensual search is confined to the terms of its authorization."  United States v. Strickland, 902 F.2d 937, 941 (11th Cir. 1990).  If a search exceeds the scope of the consent, it is impermissible.  Id.  When an individual provides a general consent to search, without expressly limiting the terms of his consent, the search "is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass."  Id.  To determine the reasonableness of the search, we must consider what the parties knew to be the object (or objects) of the search.  Florida v. Jimeno, 500 U.S. 248, 251 (1991).

Here, the district court properly denied the motion to suppress.  Gordon's consent was general in nature.  Gambrel testified that he did not tell Gordon that he was looking for anything specific.  Gordon disputed this testimony, but the magistrate judge found that Gambrel was more credible.  Importantly, Gordon did not file objections to the magistrate judge's recommendation; therefore, in order to successfully challenge this factual finding, Gordon must show that the magistrate

8

judge's determination constitutes plain error. This Gordon has failed to do. Thus, we conclude that Gambrel's search of the room, including moving the towel on the bed in the vicinity of the drugs, was allowable as within the reasonable scope of the general consent to search.

*C. Incriminating Statement*

Gordon argues that the court erred by allowing Green to testify regarding the statement Gordon made during their telephone conversation because Green did not give any <u>Miranda</u> warnings before taking the statement.

Evidentiary rulings are reviewed for an abuse of discretion. <u>United States v. Garcia</u>, 447 F.3d 1327, 1334 (11th Cir. 2006). To the extent that the district court's determination involves questions of law, however, we review those questions of law <u>de novo</u>. <u>United States v. Noriega</u>, 117 F.3d 1206, 1211 (11th Cir. 1997).

Gordon's claim fails because the requirements of <u>Miranda</u> only apply to custodial interrogations. <u>United States v. Acosta</u>, 363 F.3d 1141, 1148 (11th Cir. 2004). The record establishes that Gordon was not in custody at the time he made the statements at issue. Indeed, Gordon and Green were not even in the same town at the time of their telephone conversation; therefore, Green was not required to

9

give a <u>Miranda</u> warning prior to taking a statement from Gordon.

*D. Prior Felony Convictions*

Gordon also claims that the court should have granted his motions for judgment of acquittal because the Government failed to prove the necessary elements of the offense.

The denial of a motion for judgment of acquittal is reviewed <u>de novo</u>. <u>United States v. Hernandez</u>, 433 F.3d 1328, 1332 (11th Cir. 2005). "When the motion raises a challenge to the sufficiency of the evidence, we review the sufficiency of the evidence <u>de novo</u>, drawing all reasonable inferences in the government's favor." <u>Id.</u>

To establish a violation of 18 U.S.C. § 922(g)(1), the Government must prove beyond a reasonable doubt three elements: (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce. <u>United States v. Deleveaux</u>, 205 F.3d 1292, 1296-97 (11th Cir. 2000). Gordon does not dispute the third element; however, he asserts that the Government failed to establish that he had prior convictions and that he knowingly possessed the firearm.

Gordon's arguments fail. First, at trial Gordon testified in his own defense

and admitted that he was a convicted felon and had committed the three offenses listed in the indictment. This admission is sufficient to satisfy the Government's burden regarding the first element of this offense.

Second, the evidence sufficiently supports the jury's determination that Gordon knowingly possessed the firearm found in Room 103. To establish "knowing possession," the Government must prove actual or constructive possession through direct or circumstantial evidence. United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006). "Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control." Id. In reviewing witness testimony, the jury makes any credibility choices, and we will assume that it made them in the way that supports the verdict. United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006).

Here, Gordon testified that he did not know the firearm was in the room or on the bed. In support of this version of events, Gordon's roommate Jackson testified that he was the owner of the gun, that he had hidden the gun in the nightstand, and that he had not told Gordon that the gun was there. In direct conflict with this testimony, however, Officer Gambrel testified that he found the gun on the bed under a towel. Assuming that Gambrel's testimony was credible,

11

as the jury obviously found, the gun was on the bed within Gordon's reach, not in the nightstand where it was allegedly left by Jackson. Based on this evidence, the jury was justified in concluding that Gordon had control over the firearm. "A statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt." United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). In addition, Green testified that in his telephone conversation with Gordon, Gordon admitted his possession of the firearm. Thus, the evidence was sufficient to establish beyond a reasonable doubt that Gordon was in possession of the firearm.

The Government presented sufficient evidence on all three elements of the offense to support the jury's guilty verdict. Accordingly, we **AFFIRM**.