Don Sterling WELLS, Jr., Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2015–SC–000608–MR

Supreme Court of Kentucky.

RENDERED: MARCH 23, 2017

COUNSEL FOR APPELLANT: John Gerhart Landon, Assistant Public Advocate

COUNSEL FOR APPELLEE: Andy Beshear, Attorney General of Kentucky, James Daryl Havey, Assistant Attorney General

## OPINION OF THE COURT BY JUSTICE WRIGHT

A Fayette County Grand Jury indicted Appellant, Don Wells, Jr., on two counts of first-degree rape (victim under the age of twelve) and two counts of first-degree sodomy (victim under the age of twelve). Wells entered a conditional guilty plea to one count of first-degree rape, one count of second-degree rape, and one count of second-degree sodomy. The trial court sentenced Wells to twenty-five years' imprisonment. By entering a conditional guilty plea, Wells reserved his right to appeal the trial court's order denying his motion to suppress evidence of his confession. He now raises that issue on appeal.

Wells contends that police obtained his confession in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because he did not knowingly and voluntarily waive his rights guaranteed under the Fifth Amendment to the United States Constitution. The Commonwealth argues that *Miranda* does not apply because Wells was not in custody at the time he made incriminating statements to police. We agree with the Commonwealth despite the fact that the parties did not argue this issue to the lower court. Even if a lower court reaches its judgment

for the wrong reason, we may affirm a correct result upon any ground supported by the record. *Commonwealth v. Fields*, 194 S.W.3d 255, 257 (Ky. 2006) ("The Court of Appeals improperly held that the prosecution could not present on appeal an alternative reason justifying the decision of the trial judge. This Court has affirmed a judgment or decision of the trial court even if that court reached the right result for the wrong reason."); *Jarvis v. Commonwealth*, 960 S.W.2d 466, 469 (Ky. 1998).

Here, Lexington Police Detective James Jeffries went to the residence Wells shared with his girlfriend and her children. Officer Sisk, a uniformed patrol officer, accompanied Detective Jeffries, along with a representative of social services. Detective Jeffries asked Wells if he would come to police headquarters to answer some questions about allegations made against him. Wells agreed. Because Wells did not have a valid driver's license, he rode to police headquarters in the back of Officer Sisk's cruiser. Even though Wells was not in handcuffs, Detective Jeffries failed to clarify to Officer Sisk that Wells was not in custody. When Officer Sisk and Wells arrived at police headquarters, Officer Sisk placed Wells in a holding cell. Detective Jeffries arrived five minutes later. He then removed Wells from the holding cell and took him to an interview room.

While questioning Wells, Detective Jeffries never placed Wells in handcuffs, nor any other type of restraints. During the interview, Detective Jeffries said that: 1) police would provide Wells a ride home after the interview; 2) Wells had the right not to talk to him; 3) he would not harm Wells, and he could not beat Wells into talking to him; 4) Wells could end the interview at any point; 5) Wells was not in custody; and 6) if Wells decided he was done with the interview, Jeffries could not stop him from leaving. In fact, Detective Jeffries had Wells physically get up out of his chair and walk to the door of the interview room as if he were leaving to illustrate the point that Wells was not in custody. Only after making the aforementioned statements and having Wells enact leaving the interview room did Detective Jeffries begin the interrogation.

■ We first note that *"Miranda* warnings are required only where there has been such a restriction on the freedom of an individual as to render him in custody." *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky. 2006). According to the United States Supreme Court, " 'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 132 S.Ct. 1181, 1189, 182 L.Ed.2d 17 (2012). In *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), the Supreme Court stated that, "[o]ur decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Therefore, when determining if an individual was in custody, "courts must examine all of the circumstances surrounding the interrogation," *Howes*, 132 S.Ct. at 1189, and ask whether "a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* (internal citations and quotation marks omitted.)

■ First, Wells was unmistakably in custody when Officer Sisk placed him in the holding cell; however, during the five minutes he remained there, police did not interrogate Wells, *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297, ("[T]he term 'interrogation' under *Miranda* refers not only to express

questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."), nor did Wells make any incriminating statements at that time. Moreover, Wells was not entitled to a *Miranda* warning unless he *remained* in custody while Detective Jeffries questioned him. *United States v. Swan*, 842 F.3d 28, 32 (1st Cir. 2016) ("Swan was not entitled to a *Miranda* warning unless she *remained* in custody at the stationhouse when she made the statements now at issue.") (emphasis added).

 Next, we must decide whether Wells was "in custody" at the time he made incriminating statements to police in order to determine whether a *Miranda* warning was required. Because we agree with the United States Court of Appeals for the First Circuit that in a custodial-interrogation analysis, "we focus on the time that the relevant statements were made,"[1] *id.* at 31, our analysis focuses on the taped interview in which Wells made incriminating statements. In analyzing the interview, we turn to the factors set out by the Supreme Court of the United States in *Howes.* The "[r]elevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning . . . ." *Howes*, 132 S.Ct. at 1189 (internal citations and quotation marks omitted).

Here, Detective Jeffries questioned Wells in an interview room at police headquarters for less than one hour and fifteen minutes. During the interview, police never placed Wells in handcuffs, nor in any other type of physical restraints. In fact, Detective Jeffries informed Wells that he would not harm him or beat him into talking. Detective Jeffries told Wells that he could end the interview at any point, and that if Wells wanted to walk out the door, Jeffries could not stop him. Furthermore, Wells never told Detective Jeffries that he wanted to leave, even after Jeffries informed Wells that police would provide him a ride home when the interview concluded. Although Wells did not walk out of police headquarters a free man after the interview (as he confessed to the crimes

---

1. That Court also noted other instances the First Circuit applied this rationale:

> [I]n *United States v. McCarty*, 475 F.3d 39 (1st Cir. 2007), we considered whether to suppress unwarned statements by a defendant who had been handcuffed only minutes beforehand. Although we observed that the defendant undoubtedly had been "in custody" while restrained, we held that the situation became non-custodial by the time that the questioning began. *Id.* at 45–46. This was because the officers had taken off the defendant's handcuffs and "explained . . . that he was not under arrest, that he was free to leave at any time, and that he did not have to answer any questions." *Id.* at 46. Accordingly, there was no need to administer a Miranda warning."

*Swan*, 842 F.3d at 31–32.

Furthermore, the First Circuit notes that two other circuits have also applied this same rationale:

> Other circuits have applied a similar analysis. *See United States v. Gordon*, 294 Fed. Appx. 579, 584 (11th Cir. 2008) (per curiam) (unpublished) (holding that the defendant's telephone conversation with an agent after his arrest and release was not subject to Miranda requirements because the defendant "was not in custody at the time he made the statements at issue"); *United States v. Wallace*, 323 F.3d 1109, 1113 (8th Cir. 2003) (explaining that interrogation was non-custodial despite the fact that law enforcement "corralled the [defendant] at the onset of the search" because the "main focus must be on the individual's restraint during the interview" (emphasis in original)).

*Id.* at n.1.

for which he ultimately pled guilty), Detective Jeffries provided sufficient opportunity and explanation for Wells to stop the interrogation and leave before he made the incriminating statements that led to his arrest.

Based upon the totality of the circumstances, we conclude that a reasonable person in Wells's position would have felt he had the liberty to terminate the interrogation and leave before making incriminating statements. *Id.* Therefore, we hold that the interrogation was non-custodial. When an interrogation is non-custodial, police need not give a *Miranda* warning. *Lucas*, 195 S.W.3d at 405.[2]

For the foregoing reasons, we affirm the judgment of the trial court denying Wells's motion to suppress evidence of his confession.

All sitting. All concur.

---

**2.** Because we hold that Wells was not in custody—and thus not entitled to a *Miranda* warning—we need not address Wells's argument that the warning given by Detective Jeffries was inadequate. However, we do note that from the transcript of the interview, it appears likely that Detective Jeffries's dialogue with Wells properly apprised Wells of his rights. We will not analyze this issue in depth, however, as it does not impact the outcome of this matter.