RENDERED: APRIL 27, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0138-MR

RUVIEL HERNANDEZ                                                           APPELLANT

V.                    ON APPEAL FROM GREENUP CIRCUIT COURT
                      HONORABLE BRIAN C. MCCLOUD, JUDGE
                              NO. 18-CR-00296

COMMONWEALTH OF KENTUCKY                                                    APPELLEE

**OPINION OF THE COURT BY JUSTICE BISIG**

**<u>AFFIRMING IN PART, VACATING IN PART, AND REMANDING</u>**

A jury of the Greenup Circuit Court found Appellant Ruviel Hernandez guilty of one count of first-degree rape and four counts of first-degree sexual abuse for acts perpetrated against his niece D.M. The jury recommended a sentence of life on the rape conviction and five years on each of the sexual abuse charges, running consecutively for a total sentence of life plus twenty years. The trial court sentenced in accordance with that recommendation. Hernandez now appeals to this Court as a matter of right. KY. CONST. § 110(2)(b).

After careful review, we discern no error in the trial court's denial of Hernandez's motion to suppress his voluntary interview with law enforcement

or in the trial court's admission of other bad acts evidence pursuant to KRE[1] 404(b). We therefore affirm his convictions. However, because we conclude (and the Commonwealth does not dispute) that Hernandez's sentence was unlawful, we vacate that sentence and remand for resentencing.

**FACTUAL AND PROCEDURAL BACKGROUND**

Appellant Hernandez is a native of Mexico who came to the United States in 2003 when he was approximately twenty-one years old. English is not Hernandez's first language. After coming to the United States, Hernandez married Haley Crum. Haley's sister Brenda has four children, including D.M. and L.M. Brenda and her children would visit Haley and Hernandez at their apartment. The Commonwealth alleged that Haley and Brenda would sometimes leave the apartment during these visits, leaving Hernandez in charge of D.M., L.M., and the other children.

In 2015 D.M. and L.M. alleged that Hernandez touched them inappropriately during some of these visits between October 2013 and October 2014 when they were approximately 10 and 5 years old, respectively. More particularly, D.M. alleged that on four separate occasions Hernandez called her into a separate room in the apartment from the other children, then touched her breasts and vagina both over and underneath her clothing. L.M. similarly alleged that Hernandez touched her breasts and vagina on two occasions, once in a room in the apartment and once between two cars at a park. Trooper

---

[1] Kentucky Rules of Evidence

Nathan Carter opened an investigation and interviewed Hernandez, who denied the allegations. No arrest or charges were made at that time.

In 2018, D.M. further alleged that Hernandez had also inserted his penis in her vagina during an incident in a bathroom during the same time period of October 2013 to October 2014. After being contacted regarding this new allegation, Hernandez agreed to voluntarily appear for another interview with Trooper Carter. The recorded interview took place in a room at the local office of the Cabinet for Health and Family Services. Hernandez sat unrestrained in the seat nearest the door of the room, which was left cracked open. Trooper Carter was the only officer in the room. He sat across the desk, away from the open door, and informed Hernandez that he could leave at any time and was not under arrest. Trooper Carter did not touch Hernandez, was wearing a uniform, and was wearing but did not display a gun.

Trooper Carter did not provide Hernandez with *Miranda* warnings before or during the interview. Though English is not Hernandez's first language, Trooper Carter also did not ask him if he wanted the services of an interpreter. Nor was such an interpreter provided. Trooper Carter told Hernandez on several occasions during the interview that he knew Hernandez had inappropriately touched D.M. and that he could indict him and put him in prison. Near the conclusion of the interview, Hernandez confessed to D.M.'s allegations and stated D.M. "pushed him" to engage in the alleged acts and "wanted sex." However he continued to deny L.M.'s allegations. Trooper Carter

3

then placed Hernandez under arrest. The interview lasted less than forty minutes.

A Greenup County grand jury indicted Hernandez on one charge of first-degree rape and four charges of sexual abuse in the first-degree. These charges related only to D.M.'s allegations and did not involve any alleged conduct against L.M. Before trial, the Commonwealth filed a motion to introduce other bad acts evidence of L.M.'s allegations against Hernandez pursuant to KRE 404(b), though Hernandez had never been charged regarding those allegations. Hernandez filed a motion to exclude such evidence as well as a motion to suppress his interview with Trooper Carter.

The trial court held a hearing on the suppression motion on November 22, 2021 and ruled that suppression was not warranted because Hernandez was not in custody during the interview and could understand Trooper Carter. The trial court did not hold a hearing regarding the KRE 404(b) motion, but rather ruled orally from the bench at trial prior to L.M.'s testimony that her allegations were admissible to show motive and lack of mistake.

The jury convicted Hernandez of one count of first-degree rape and four counts of first-degree sexual abuse and recommended a sentence of life on the rape conviction and five years on each of the sexual abuse convictions to run consecutively for a total sentence of life plus twenty years. On March 17, 2022 the trial court entered a judgment sentencing Hernandez consistent with that recommendation. Thereafter, the trial court entered a written order on April 7,

4

2022 memorializing its oral grant of the Commonwealth's KRE 404(b) motion at trial. Hernandez now appeals as a matter of right.

## ANALYSIS

Hernandez raises three issues for our review: (1) whether the trial court erred in refusing to suppress his interview given Trooper Carter's failure to provide *Miranda* warnings and an interpreter; (2) whether the trial court erred in admitting other bad acts evidence regarding L.M.'s allegations against Hernandez pursuant to KRE 404(b); and (3) whether running Hernandez's life sentence for rape consecutive to the twenty-year sentence for sexual abuse was unlawful. We address each issue in turn, providing additional facts as necessary.

**I.** **The trial court did not err in finding *Miranda* warnings were not required because Hernandez was not in custody at the time of his interview with Trooper Carter.**

Hernandez first argues the trial court erred in denying his motion to suppress his interview with Trooper Carter because Trooper Carter failed to provide *Miranda* warnings before the interview. This allegation of error is preserved by Hernandez's filing of a motion to suppress before the trial court raising the issue. *Nichols v. Commonwealth*, 142 S.W.3d 683, 691 (Ky. 2004).

When considering a trial court's ruling on a motion to suppress, we review the trial court's findings of fact under the clear-error standard and thus defer to those findings if they are supported by substantial evidence. *Cox v. Commonwealth*, 641 S.W.3d 101, 113 (Ky. 2022). We review the trial court's application of law to those facts *de novo*. *Id.*

5

It is well-established that under *Miranda v. Arizona*, 384 U.S. 436 (1966), "statements made by an accused during a *custodial interrogation* are inadmissible unless the accused is advised of his rights." *Wise v. Commonwealth*, 422 S.W.3d 262, 270 (Ky. 2013) (emphasis added). In particular, the suspect "'must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Id.* at 269-70.

However, *Miranda* requires such warnings only "when the suspect being questioned is in custody." *Cecil v. Commonwealth*, 297 S.W.3d 12, 16 (Ky. 2009). A person is not in custody and thus *Miranda* warnings are not required if "considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave." *Id.* In applying this test, we examine the totality of the circumstances, including factors such as:

1) the location of the interview;

2) the number of officers present;

3) the brandishing or display of a weapon by officers;

4) any physical touching of the suspect by officers;

5) whether the suspect was handcuffed or otherwise restrained;

6) any tone or language suggesting that compliance would be compelled;

7) statements made during the interview;

8) the duration of the interview; and

9) whether the suspect was released at the end of the interview.

*Id.*; *Wells v. Commonwealth*, 512 S.W.3d 720, 723-24 (Ky. 2017). The Commonwealth bears the burden of demonstrating that the suspect was not in custody. *Taylor v. Commonwealth*, 611 S.W.3d 730, 743 (Ky. 2020).

Here, we conclude that the totality of the circumstances are such that a reasonable person would have felt free to terminate the interview with Trooper Carter and leave. Trooper Carter explicitly told Hernandez at the beginning of the interview that he was not under arrest and was free to leave at any time. The physical setting of the interview was consistent with that representation, occurring in a room in the offices of the Cabinet for Health and Family Services rather than at the police station. The door of the room was, though perhaps only cracked, nonetheless open rather than closed. Hernandez sat by that door, while Trooper Carter sat on the opposite side of the desk away from the door. Trooper Carter, though uniformed, was the only officer in the room. He did not brandish or display a weapon. He did not physically touch Hernandez, nor was Hernandez handcuffed or otherwise restrained. In reviewing the recorded interview, we also discern no threatening tone or language in Trooper Carter's statements. To the contrary, it is apparent that Trooper Carter endeavored to be amicable and develop a rapport with Hernandez. Trooper Carter told Hernandez he respected him and stated repeatedly throughout the interview he was not angry with him. The interview was also of short duration, lasting less than forty minutes. Under such circumstances a reasonable person would have felt free to terminate the interview and leave.

7

We acknowledge that during the interview, Trooper Carter referenced other alleged illegal conduct by Hernandez and also told Hernandez on several occasions that he had lots of evidence against him, knew he was guilty, and could indict him and put him in prison.[2]  Generally, an officer's *undisclosed* suspicions regarding the suspect's guilt "do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the *Miranda* custody inquiry."  *Stansbury v. California*, 511 U.S. 318, 324 (1994).  However where, as here, the officer *discloses* such suspicions to the suspect, the disclosure is relevant to a determination of whether the suspect is in custody, but

> only to the extent [it] would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "freedom of action."  Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest.

*Id.* at 325 (citation omitted).  Thus, "[t]he weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case."  *Id.*

---

[2] Hernandez also contends the record supports a finding that Trooper Carter threatened to indict his wife Haley and take away their children.  We disagree.  Haley simply testified that her children were removed for two months and that Trooper Carter told *her* he would indict her.  Haley further testified she was unaware whether Hernandez knew of that threat because she had been interrogated before him.  Trooper Carter testified he did not recall making any such threats.  There was therefore no substantial evidence of record to support a finding that Trooper Carter told Hernandez he would indict Haley and take away their children.

8

Trooper Carter's statements regarding his belief that Hernandez was guilty are not, without more, sufficient to support a finding that Hernandez was in custody for purposes of *Miranda*. Though Trooper Carter referenced his suspicions several times throughout the interview, he did so in a friendly rather than threatening tone. Notably, he also told Hernandez both at the beginning and partway through the interview that he was not under arrest. *See Peacher v. Commonwealth*, 391 S.W.3d 821, 848 (Ky. 2013) (finding suspect was not in custody even where officer used severe tone in confronting him with statement inconsistencies, given that officer also assured suspect he was not under arrest). Quite simply, Trooper Carter's voicing of his belief as to Hernandez's guilt did not rise to a level that would cause a reasonable person to believe they were unable to terminate the interview and leave or otherwise create a serious risk of coercion, and thus do not support a conclusion that Hernandez was in custody for purposes of *Miranda*. *See Wells*, 512 S.W.3d at 722 ("'[C]ustody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." (quoting *Howes v. Fields*, 565 U.S. 499 (2012))).

Likewise, the mere fact that Hernandez was arrested at the end of the interview after confessing does not support a finding that he was in custody at the time of the interview. *See id.* at 723-24 (finding that suspect was not in custody simply because he was arrested at the conclusion of the interview after making incriminating statements). Thus, in considering the totality of the circumstances we conclude the trial court correctly determined that a reasonable person would have felt at liberty to terminate the interrogation and

9

leave.  As such, Hernandez was not in custody and *Miranda* warnings were not required.  The trial court therefore did not err in denying Hernandez's motion to suppress the statements.

**II.  The trial court did not err in finding that Hernandez sufficiently understood the English language and the American legal system such that an interpreter was not required during the interview.**

We also find no error in the trial court's conclusion that neither Trooper Carter's failure to provide Hernandez with an interpreter nor Hernandez's alleged lack of familiarity with the American legal system warranted suppression of the interview.  After closely scrutinizing the recorded interview, we agree with the trial court that Hernandez's English language skills were sufficient that an interpreter was not necessary during the interview.[3] Hernandez provided appropriate and articulate English responses to the questions posed by Trooper Carter.  The responses were not merely "yes" or "no" but also included lengthier responses that utilized more than an elementary level of English vocabulary.  For example, Hernandez stated during the interview that D.M. "pushed" him to engage in the acts at issue, using "push" not in the concrete physical sense but rather in the more abstract sense

---

[3] Hernandez points out that he was provided an interpreter and translation at all other phases of the legal proceedings.  However, court proceedings involve technical legal terms and ideas that are generally unlikely to be used in the course of a typical police interview.  Thus, interpreters may be warranted for court proceedings even for a defendant with a fairly strong command of the English language, while the same defendant nonetheless may also have the necessary English skills to fully participate in a police interview without the assistance of an interpreter.  We therefore do not find the provision of an interpreter to Hernandez for other phases of the legal proceedings dispositive as to whether an interpreter was necessary for his interview with Trooper Carter.

10

of encouraging or compelling someone to do something. It is clear that Hernandez understood the purpose of the interview, the statements and questions posed by Trooper Carter, and the meaning of his responses. We therefore find no error in the trial court's conclusion Hernandez had sufficient command of the English language such that an interpreter was not necessary for his complete, meaningful, knowing and uncoerced participation in the interview.[4]

Finally, we also find no merit in Hernandez's contention that his statement should have been suppressed due to alleged lack of familiarity with the American legal system. Hernandez had lived in the United States for thirteen or fourteen years before the interview occurred. In addition, he had participated in a police interview in 2015 which he left without being further arrested or detained. Moreover, Trooper Carter explicitly told Hernandez he could leave at any time and informed him at least twice that he was not under arrest. On these facts, we cannot find that Hernandez was so unfamiliar with the American legal system that his participation in the interview presented a serious risk of coercion. Accordingly, the trial court properly denied Hernandez's motion to suppress the interview.

---

[4] While we do not find that the lack of an interpreter here resulted in a serious risk of coercion or unknowing or involuntary statements by Hernandez, we nonetheless pause to note that a non-English speaker's interactions with law enforcement may present such a risk depending on the suspect's familiarity and sophistication with the English language. Moreover, it may be difficult for officers to accurately determine the level of the suspect's familiarity with English. Thus, while not always required, it is often better practice for law enforcement officers interacting with suspects whose first language is not English to, at a minimum, inquire whether the suspect desires to have an interpreter present.

### III. The trial court properly determined L.M.'s allegations against Hernandez were admissible pursuant to KRE 404(b).

Hernandez next argues the trial court erred in admitting other bad acts evidence of L.M.'s allegations against him in violation of KRE 404(b). Hernandez stated objections to the admission of such evidence at trial, which the trial court overruled. His allegation of error is therefore preserved. KRE 103(a)(1); RCr[5] 9.22; *Daniel v. Commonwealth*, 607 S.W.3d 626, 632 (Ky. 2020) (noting that alleged error "was properly preserved for our review by [appellant's] objection to the evidence on . . . KRE 404(b) grounds.").

KRE 404(b) governs the admissibility of evidence of other crimes, wrongs, or acts. It provides that such evidence is "not admissible to prove the character of a person in order to show action in conformity therewith." However, the Rule also provides that such evidence may be admissible if "offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1).

In determining whether to admit evidence of other crimes, wrongs, or acts under KRE 404(b), a trial court must consider the three factors of relevance, probativeness, and prejudice as set forth in *Bell v. Commonwealth*, 875 S.W.2d 882 (Ky. 1994). That is, the trial court must consider 1) whether the proffered evidence is relevant for some purpose other than to prove the defendant's criminal disposition, 2) whether evidence of the other crime, wrong,

---

[5] Kentucky Rules of Criminal Procedure

or act is sufficiently probative of its commission by the defendant, and 3) whether the potential prejudice from admission of the proffered evidence substantially outweighs its probative value. *Bell*, 875 S.W.2d at 889-91. In considering these factors, the trial court "must apply [KRE 404(b)] cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime." *Id.* at 889. We review a trial court's decision to admit evidence under KRE 404(b) for abuse of discretion. *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007). That is, we consider whether the trial court's ruling was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Here, evidence of L.M.'s allegations against Hernandez was relevant to the issues of mistake, motive, intent, opportunity, preparation, and plan, all of which are permissible purposes for the admission of other bad acts evidence under KRE 404(b). As to opportunity, Hernandez's defense to D.M.'s allegations involved his claim that he lacked opportunity because he was never left alone with the children. L.M.'s allegations countered that defense by demonstrating that Hernandez had an opportunity to engage in the conduct charged. Further establishing motive, intent, and lack of mistake, D.M. alleged that Hernandez had touched her breasts and vagina both above and beneath her clothing when she was a young girl. L.M. alleged similar conduct, asserting that Hernandez had also touched her breasts and vagina both above and beneath her clothing when she was also very young. Relevant to preparation

13

and plan, both girls alleged incidents that had occurred in Hernandez's apartment when Hernandez separated the victim from the other children in the home. Both also alleged Hernandez engaged in the abuse when Haley and Brenda would leave the children alone with him. Both girls were Hernandez's nieces and thus also had the same relationship with him which established motive and intent. Given these significant similarities, L.M.'s allegations were relevant to demonstrate that Hernandez's abuse of D.M. was not mistaken or accidental touching, but rather intentional. L.M.'s allegations were also relevant to motive insofar as they demonstrated his sexual interest in young girls. L.M.'s allegations were thus relevant for permissible purposes under KRE 404(b).

L.M.'s allegations were also sufficiently probative that Hernandez had in fact abused her. L.M. first made the allegations in 2015, and then made the same allegations three years later in 2018. Her maintenance of the same allegations over a three-year period of time, particularly given her young age of between approximately 8 and 11 years old during that time, lends sufficient credibility to her statements that a jury could reasonably conclude the acts occurred and that Hernandez was the perpetrator. While Hernandez contends L.M.'s testimony lacked credibility because the prosecutor asked her leading questions, our review of that testimony reveals many questions were appropriate, with at most minimal leading by the prosecutor. Certainly there was no leading sufficient to find the trial court abused its broad discretion to allow leading questions during this testimony by a thirteen-year-old child. *See*

14

*Hardy v. Commonwealth*, 719 S.W.2d 727, 729 (Ky. 1986) ("The trial judge has broad discretion in permitting leading questions to a child of tender years . . . ."). Thus L.M.'s allegations were also sufficiently probative to satisfy the second *Bell* factor.

Finally, we also find no abuse of discretion in the trial court's determination that the prejudicial impact of L.M.'s allegations did not substantially outweigh their probativeness. Certainly L.M.'s testimony was highly prejudicial to Hernandez given that she testified he sexually abused her on multiple occasions when she was less than ten years old. However, her testimony was also highly probative as to mistake, motive, intent, opportunity, preparation, and plan, particularly given the significant and substantial similarities between her allegations and those made by D.M. Moreover, while L.M.'s allegations were referenced in the prosecution's opening and closing statements and in Trooper Carter's testimony, those references were not so repetitive as to become unduly prejudicial. In addition, L.M.'s testimony itself only lasted twelve minutes of the two-day trial. Thus, the third *Bell* factor as to prejudice was also satisfied and there was no error in the trial court's admission of L.M.'s allegations pursuant to KRE 404(b).

### IV. The trial court did not err in failing to hold a hearing and rule before trial regarding Hernandez's motion to exclude evidence pursuant to KRE 404(b).

Hernandez also argues that his pre-trial motion to exclude L.M.'s allegations pursuant to KRE 404(b) was a motion to suppress evidence and that the trial court therefore violated RCr 8.27 by failing to hold an evidentiary

15

hearing and rule before trial regarding that motion. RCr 8.27(2) provides that a trial court "shall conduct a hearing on the record and before trial on issues raised by a *motion to suppress evidence*." (Emphasis added). The Rule is mandatory, requiring trial courts to hold hearings before trial on motions to suppress evidence.

Notably, however, the Rule is limited to motions to suppress and thus does not address other types of pre-trial motions. Here, Hernandez contends his motion to exclude evidence under KRE 404(b) was a "motion to suppress evidence" for purpose of RCr 8.27. We disagree. While neither RCr 8.27 itself nor RCr 1.06's provision of general definitions for the Rules of Criminal Procedure define a "motion to suppress," it is plain that the term as used in RCr 8.27 refers only to motions seeking to exclude the introduction of evidence on grounds that the evidence was obtained unlawfully.

First, as used elsewhere in the Rules of Criminal Procedure, the term "motion to suppress" refers to a motion raising an objection "to evidence on the ground that it was acquired by unlawful means." RCr 3.14(3). Second, this usage of the term in our Rules of Criminal Procedure also comports with the common legal understanding of a motion to suppress as a "request that the court prohibit the introduction of illegally obtained evidence at a criminal trial." *Motion to Suppress,* BLACK'S LAW DICTIONARY (11th ed. 2019). Third, the maintenance of a legal distinction between motions to suppress and KRE 404(b) motions is also evident in the separate standards applicable to appellate review regarding such motions. *Compare Cox,* 641 S.W.3d at 113 (noting that

16

rulings on motions to suppress are reviewed for clear error as to facts and *de novo* as to application of law) *with Anderson,* 231 S.W.3d at 119 (noting that rulings regarding KRE 404(b) motions are reviewed for abuse of discretion). Accordingly, we hold that RCr 8.27 governs only motions to suppress, *i.e.* only requests for an exclusion of evidence on grounds it was acquired by unlawful means. Hernandez's motion to exclude evidence under KRE 404(b) was not such a motion, and thus did not fall within the scope of RCr 8.27. The trial court therefore did not violate RCr 8.27 by failing to hold a hearing regarding the motion.

Though the trial court did not violate RCr 8.27 by failing to hold a hearing regarding Hernandez's KRE 404(b) motion, we have previously noted "best practice . . . dictates that a trial court conduct a hearing and make an affirmative ruling *before* trial" regarding motions made pursuant to KRE 404(b). *Luna v. Commonwealth,* 460 S.W.3d 851, 877 (Ky. 2015). However, a pre-trial hearing is not *mandatory.* Moreover, any failure of the trial court here to hold a hearing before trial was at most harmless error given our conclusion that L.M.'s allegations against Hernandez were in any event admissible under KRE 404(b). *See supra* Part III. Finally, while Hernandez points out that the trial judge stated after trial that he should have held a hearing and would have excluded L.M.'s testimony if he had done so, such Monday morning quarterbacking by the trial court alone is not a legal basis to reverse a conviction, particularly where—as here—we determine in any event that the trial court's decision was correct.

Hernandez also argues that the trial court's failure to rule on his KRE 404(b) motion was a violation of RCr 8.20. That Rule generally requires a trial court to rule before trial on all pretrial motions. RCr 8.20(2). However, the Rule also provides that a trial court may defer ruling where it finds good cause to do so. Here the record is silent as to whether the trial court determined there was good cause to wait until trial to rule on the KRE 404(b) motion. However, even if its failure to rule was not supported by a finding of good cause, any violation of RCr 8.20 was at most harmless error. The trial court ruled orally from the bench regarding the KRE 404(b) motion before L.M. was allowed to testify, and Hernandez points to no prejudice flowing from this allegedly belated ruling. Further, because we have concluded L.M.'s allegations were admissible under KRE 404(b) in any event, we find any such error harmless as there is no basis to conclude it substantially impacted the ultimate outcome at trial. *See Mason v. Commonwealth*, 559 S.W.3d 337, 339-40 (Ky. 2018) (noting non-constitutional evidentiary errors "'may be deemed harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error.'" (quoting *Murray v. Commonwealth*, 399 S.W.3d 398, 404 (Ky. 2013))).

### V. The sentence imposed by the trial court is unlawful and the matter therefore must be remanded for resentencing.

Finally, Hernandez argues his sentence of life plus twenty years is unlawful because no sentence may run consecutive to a life sentence pursuant to our holding in *Bedell v. Commonwealth*, 870 S.W.2d 779 (Ky. 1993). The Commonwealth concedes the sentence violates *Bedell*, though it asserts

18

Hernandez's allegation of error is unpreserved. We nonetheless proceed to consider the merits of Hernandez's argument given that "[s]entencing is jurisdictional," "all defendants have the right to be sentenced after due consideration of all applicable law[,]" *Cummings v. Commonwealth*, 226 S.W.3d 62, 66 (Ky. 2007) (quoting *Hughes v. Commonwealth*, 875 S.W.2d 99, 100 (Ky. 1994)), and thus "sentencing issues may be raised for the first time on appeal . . . ." *Id.*

In *Bedell*, we held that "no sentence can be ordered to run consecutively with . . . a life sentence in any case." *Bedell*, 870 S.W.2d at 783. Here, the judgment entered by the trial court sentenced Hernandez to a sentence of life plus twenty years. The sentence therefore violates our holding in *Bedell*. Accordingly, we vacate and remand with direction to the trial court for resentencing that runs the twenty-year sentence concurrent with the life sentence. *See Winstead v. Commonwealth*, 327 S.W.3d 386, 409 (Ky. 2010) (vacating consecutive sentences of life plus twenty years and remanding to trial court for "resentencing that runs the term of years concurrent with [the life sentence]").

19

## CONCLUSION

For the foregoing reasons we affirm Hernandez's convictions, vacate his sentence, and remand to the Greenup Circuit Court with directions to resentence Hernandez to concurrent sentences and enter a new judgment consistent with this opinion.

Vanmeter, C.J.; Bisig, Keller, Lambert, Nickell, and Thompson, JJ., sitting. All concur. Conley, J., not sitting.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny Lynn Sanders
Assistant Attorney General