RENDERED:  OCTOBER 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0419-MR

KEVIN EUGENE HUDSON          APPELLANT

v.          APPEAL FROM WARREN CIRCUIT COURT
HONORABLE J. B. HINES, JUDGE
ACTION NOS. 23-CR-00041 AND 23-CR-00042

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, ECKERLE, AND McNEILL, JUDGES.

CALDWELL, JUDGE:  Kevin Eugene Hudson ("Hudson") appeals from the denial of his motion to suppress evidence.  We affirm.

## FACTS

Following a traffic stop and vehicle search, Hudson was indicted for allegedly importing Fentanyl, possessing drug paraphernalia, careless driving, following another vehicle too closely, and being a convicted felon in possession of

a handgun.[1]  Hudson filed a motion to suppress.  He asserted that the vehicle was searched without a warrant, that no exception to the requirement for obtaining a search warrant applied, and that all evidence seized during the traffic stop or derived therefrom was illegally obtained and should be suppressed.

The Warren Circuit Court ("the trial court") conducted a hearing on the motion to suppress.  State Trooper Richard Ellis ("Trooper Ellis"), who had pulled Hudson over, testified.  Also, a video from the dashboard camera ("dashcam") of Trooper Ellis' vehicle was played at the hearing.

According to Trooper Ellis' testimony, in April 2022, Trooper Ellis tracked a car driven by Hudson on Interstate 65 for about twenty miles before he stopped the car.  He remembered that the car had a temporary tag and that there had been a lot of fraud associated with temporary tags at that time.  The trooper recalled seeing this car following other vehicles too closely, passing on the right side, and cutting in front of a semi-truck without leaving the truck enough room to stop.  He testified to smelling a "hint" of marijuana when he approached the car, although he admitted that he did not mention this smell in his written report.  The

---

[1] Hudson was indicted for being a convicted felon in possession of a handgun in Warren Circuit Court Case No. 23-CR-00042 and for the other offenses in Case No. 23-CR-00041.  However, the trial court essentially resolved the two indictments together.  For example, the trial court issued an order denying the motion to suppress and entered an amended judgment and sentence on a plea of guilt, with both case numbers noted on the order and the judgment.

trooper also recounted seeing Hudson in the driver's side and a passenger, Larry Groves ("Groves"), lying down in the backseat, which the trooper found odd.

The dashcam video shows that Trooper Ellis allowed Hudson and Groves to stay in the car when he initially approached the car and talked with them for a couple of minutes. The trooper did not mention anything about smelling marijuana to Hudson and Groves during this interaction. Hudson provided his driver's license and vehicle registration, but he could not immediately find his proof of insurance on his cell phone.

While Hudson looked for his proof of insurance, the trooper went back to his cruiser to run the license through dispatch. Trooper Ellis learned from dispatch that Hudson had two active non-extraditable warrants from Tennessee. Hudson had one warrant for fleeing and evading and another for drug possession, attempted robbery, and resisting arrest. Trooper Ellis admitted in his testimony that he did not have the authority to arrest Hudson on these warrants.

Meanwhile, another law enforcement officer arrived on the scene. Despite traffic noise compromising audibility, Trooper Ellis can be heard on the dashcam video telling the other officer that he had smelled a "hint of weed" coming from Hudson's car.

Next, the dashcam video shows that Trooper Ellis returned to Hudson's car and told Hudson and Groves to get out of the car, stating he could not

-3-

hear them due to the traffic. (Trooper Ellis testified he was also concerned that Hudson would flee, especially if Hudson suspected he would be searched due to the smell of marijuana.) Trooper Ellis again did not inform the car's occupants about smelling marijuana.

After Hudson and Groves got out of the car, Trooper Ellis asked Groves if he had any weapons on him. Trooper Ellis patted Groves down and found a suspected crack pipe. The trooper asked Hudson if there was anything illegal in the car and Hudson shook his head, indicating no.

Next, Trooper Ellis asked Hudson if there was anything on him. Before Hudson could answer, the trooper patted Hudson down but did not detect anything suspicious. As the backup officer stood close by, Trooper Ellis again asked Hudson if there was anything illegal in the car. Hudson said there was a gun. The trooper also asked if Hudson was a convicted felon prohibited from possessing guns. Hudson replied in the affirmative.

At that point, Trooper Ellis placed Hudson in handcuffs and searched the car. No marijuana or other items associated with marijuana use were found in the car. However, the trooper found a loaded handgun, a crack pipe (in addition to the one found on Groves), and two plastic baggies containing 142 tablets which the trooper suspected to be Fentanyl in the car. Hudson and Groves were then arrested.

At the hearing, after the dashcam video was reviewed, Trooper Ellis was questioned by both the Commonwealth and defense counsel. Defense counsel asked why Trooper Ellis patted Hudson down after returning from his cruiser. The trooper replied he did so for his safety. He also acknowledged that he did not ask Hudson and Groves to get out of the car until he learned of Hudson's warrants and that he did not note the smell of marijuana on his written report. Upon re-direct, the trooper explained that he did not always write down all sense impressions on his written reports. He also stated that people often threw marijuana cigarettes out the window after smoking, which could explain why he smelled a hint of marijuana but found no marijuana in the car.

After Trooper Ellis' testimony concluded and he was excused, defense counsel argued there was no probable cause to search the car and the duration of the traffic stop was impermissibly extended. He further asserted that all evidence collected from extending the traffic stop must be suppressed, citing *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015) and *Davis v. Commonwealth*, 484 S.W.3d 288 (Ky. 2016). The Commonwealth disagreed with defense counsel's assertions and filed a memorandum of law challenging the suppression motion. Shortly thereafter, the trial court entered a written order denying the suppression motion with findings of fact and legal analysis.

The trial court determined the traffic stop was properly initiated after the trooper observed multiple traffic violations. The court further stated that the trooper's smelling marijuana emanating from the vehicle, by itself, likely amounted to probable cause to search the car for contraband. The court also noted the trooper's smelling the marijuana was corroborated by the dashcam video.

The court further held that the trooper lawfully directed the car's occupants to exit the car after discovering Hudson had two non-extradition warrants, including one for fleeing and evading. Moreover, the court determined that Hudson's admission to being a convicted felon in possession of a gun also contributed to establishing probable cause to search the car without a warrant. The trial court also determined the traffic stop was not improperly extended, noting the search was completed less than fourteen minutes after the car was pulled over.

Following the denial of his suppression motion, Hudson entered a conditional guilty plea to amended charges of first-degree trafficking of a controlled substance (Fentanyl) and possession of a handgun by a convicted felon. He reserved his right to appeal from the denial of his suppression motion. The trial court accepted the plea and sentenced Hudson to ten years' imprisonment for each of these offenses to run concurrently for a total of ten years' imprisonment.

Hudson filed a timely appeal. He argues on appeal error in the trial court finding probable cause existed based on the trooper's smelling a hint of

marijuana and Hudson's responses to the trooper's questions. He also challenges the legality of the pat-down. The Commonwealth disagrees with these arguments and further asserts that some issues raised by Hudson on appeal were not raised to the trial court and so are unpreserved. Hudson disputes the lack of preservation about the pat-down issue and alternatively requests review pursuant to RCr[2] 10.26 if this Court concludes this issue is unpreserved.

Further facts will be set forth as needed in our analysis.

## ANALYSIS

### Applicable Standards of Review

"When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law." *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006) (citing *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)).

However, if any issues raised on appeal were not raised to the trial court and thus were not preserved for appeal, we may review such unpreserved issues for palpable error resulting in manifest injustice, *see* RCr 10.26, particularly if such palpable error review is requested. If palpable error review is not requested

---

[2] Kentucky Rules of Criminal Procedure.

for unpreserved issues, however, appellate courts may—subject to certain exceptions—decline to reach such unpreserved issues at all. *See e.g.*, *Webster v. Commonwealth*, 438 S.W.3d 321, 325 (Ky. 2014).

With these standards in mind, we consider the parties' arguments.

## I. No Reversible Error in Trial Court's Holding that Officer's Smelling a Hint of Marijuana, By Itself, Likely Established Probable Cause to Search the Car

Hudson first alleges error in the trial court's holding that the trooper's smelling a hint of marijuana coming from the car likely amounted to probable cause to search the vehicle for contraband.

Hudson emphasizes that Trooper Ellis did not write down anything about smelling marijuana in his report and that the trooper never mentioned smelling marijuana to Hudson and Groves or noted any signs they were impaired. The trial court acknowledged in its factual findings that the written report did not mention the smell of marijuana and that Trooper Ellis did not mention marijuana when speaking with Hudson and Groves. However, the trial court still found credible the trooper's testimony that he smelled marijuana, noting this was corroborated by the dashcam video (in which the trooper can be heard telling the other officer about smelling "a hint of weed" coming from the car). Moreover, the trial court noted Trooper Ellis' testimony that he did not mention marijuana to Hudson because he did not want Hudson to flee—especially after hearing about

Hudson's warrant for fleeing and evading. Though not mentioned in the trial court's order, Trooper Ellis also testified that he did not always record all sense impressions in his written reports.

To the extent that Hudson is challenging the accuracy of the trial court's factual finding that the trooper did smell a hint of marijuana coming from the car, this factual finding is supported by substantial evidence and so is not clearly erroneous. *See Whitlow v. Commonwealth*, 575 S.W.3d 663, 668 (Ky. 2019) (factual findings made in order resolving a suppression motion will be upheld as not clearly erroneous if they are supported by substantial evidence). Moreover, we must extend considerable deference to the trial court's unique opportunity to assess the credibility of witnesses and the weight of the evidence. *See Osborne v. Commonwealth*, No. 2024-SC-0166-DG, ___ S.W.3d ___, 2025 WL 1717628, at *3 (Ky. Jun. 20, 2025) (to be published and final as of July 11, 2025) ("When confronted with inconsistent testimony or other conflicting evidence at a suppression hearing, the trial court, as factfinder, is entitled to weigh the evidence and judge the credibility of the witnesses.").

In sum, the trial court's finding that Trooper Ellis smelled a hint of marijuana coming from the car must be upheld. Next, we address Hudson's

arguments that the trial court misapplied the law in concluding there was probable cause to search the car based (at least in part) on the faint smell of marijuana.[3]

Hudson concedes that our precedent recognizes that the smell of marijuana emanating from a car establishes probable cause to search the car. *See Greer v. Commonwealth*, 514 S.W.3d 566, 568 (Ky. App. 2017); *Dunn v. Commonwealth*, 199 S.W.3d 775, 776 (Ky. App. 2006). In other words, when an officer smells marijuana coming from a car, the automobile exception to the warrant requirement applies. The automobile exception permits searches of lawfully stopped vehicles without a warrant when there is probable cause to believe the vehicle contains contraband or evidence of a crime. *Id.*

Hudson describes precedent allowing for warrantless searches of vehicles under these circumstances as recognizing a "plain smell" doctrine. *See also Mayfield v. Commonwealth*, 590 S.W.3d 300, 303-05 (Ky. App. 2019) (discussing "plain smell" doctrine permitting not just search of car but also search of one's person due to odor of marijuana).

However, Hudson argues that this case is distinguishable from precedent such as *Dunn*, 199 S.W.3d 775, because Trooper Ellis only smelled a faint odor of marijuana emanating from the pulled-over car. In contrast, he

---

[3] Although the trial court stated the faint smell of marijuana likely established probable cause to search the car, the trial court ultimately concluded that probable cause was established due to both the faint smell of marijuana and Hudson's responses to the trooper's questions.

-10-

emphasizes that a "strong odor of marijuana" was noted in *Dunn.* 199 S.W.3d at 776. Hudson also points out that the officer noted the driver's and passenger's red eyes, nervous demeanor, and evasive answers in *Dunn*, 199 S.W.3d at 775-76, and that Trooper Ellis admitted Hudson and Groves did not appear impaired and were cooperative in answering questions. Hudson also emphasizes that no marijuana or marijuana-related items (such as rolling papers) were found when the car was searched. He acknowledges the trooper's testimony about people typically tossing out roaches after smoking marijuana. But he points out the trooper did not observe anything being tossed out the window despite tracking the car for about twenty miles.

Hudson contends that the faint odor indicated that neither he nor Groves had recently smoked marijuana. He also asserts that since *Dunn* was rendered in 2006, marijuana has become legal—at least for certain purposes—in many jurisdictions. He concedes that marijuana use had not been legalized in Kentucky for any purpose (including medical purposes) during the 2022 incident at issue. However, he notes Kentucky has since recently adopted a comprehensive medical cannabis law. *See* KRS[4] 218B.015 (effective July 1, 2024). He also states that, in November 2022, Governor Beshear signed an executive order providing some protection for medical patients who obtained cannabis in other jurisdictions

---

[4] Kentucky Revised Statutes.

-11-

where it was legal to do so.  Moreover, he points to precedent from at least one other state in which an appellate court held that law enforcement officers could no longer search cars based solely on the odor of marijuana after medical marijuana became legal in that state.[5]

Hudson concedes that even medical marijuana use was not yet legal in Kentucky when he was stopped in Kentucky in April 2022.  However, he stresses he was coming from Ohio when he was stopped in Kentucky, and he claims that medical marijuana use had been legal in Ohio for several years before the April 2022 incident and that Ohio fully legalized marijuana use in 2023.  So, he argues, this Court must hold that there was no probable cause to search the car under the facts of this case—especially given the changing laws about marijuana use, the faint marijuana odor, and the lack of mention of marijuana in the trooper's written report and oral discussions with Hudson and Groves.  We reject this argument.[6]

Regardless of whether Ohio had legalized medical marijuana use at the time of Hudson's being pulled over in Kentucky in 2022, Hudson has not

---

[5] In his initial appellant brief, Hudson cites to *Commonwealth v. Barr*, 240 A.3d 1263 (Pa. Super. 2020), which was vacated in *Commonwealth v. Barr*, 266 A.3d 25, 28 (Pa. 2021).  This extra-jurisdictional authority is not binding on us, and we decline to discuss it further—especially since medical marijuana was not legal in Kentucky when Trooper Ellis stopped Hudson's car in Kentucky in April 2022.  Similarly, we decline to discuss Florida and Illinois precedent cited in Hudson's reply brief.  *See Baxter v. State*, 389 So. 3d 803, 810-11 (Fla. Dist. App. 2024); *People v. Redmond*, 248 N.E.3d 1026, 1039 (Ill. 2024).

[6] Although not discussed in the parties' briefs, it does not appear that Hudson made the argument about legalization to the trial court based on our review of the record.

directly alleged that any hint of marijuana odor stemmed from any type of medical treatment. Moreover, when he was pulled over in Kentucky in April 2022, any type of marijuana use was illegal in Kentucky. Indeed, recreational use of marijuana is still illegal in Kentucky. *See* KRS 218A.1422 (defining crime of possession of marijuana). Thus, we discern no error in the trial court's holding that the faint smell of marijuana likely established probable cause. The faint smell of marijuana could reasonably be viewed as an indication that the vehicle contained contraband or evidence of illegal activity so the automobile exception to the warrant requirement would apply. *See generally Dunn*, 199 S.W.3d at 776. *See also Greer*, 514 S.W.3d at 568 ("Once the officer smelled the marijuana coming from the car, he had probable cause to search the vehicle and all of its contents.").

Moreover, the noted faintness of the marijuana odor detected by Trooper Ellis does not mean that the trial court erred in considering this odor as part of its reasons for determining that probable cause existed to search the car. While a strong marijuana odor was noted in *Dunn*, 199 S.W.3d at 776, we are unaware of any precedent specifically requiring that the odor of marijuana be strong for the automobile exception to the warrant requirement to apply. In fact, this Court has analogized a trained dog's detection of the scent of illegal drugs (presumably imperceptible to humans) to an officer's smelling a strong odor of marijuana in *Dunn*, 199 S.W.3d 775, and determined this established probable

-13-

cause to search the defendant's person in addition to his vehicle. *See Morton v. Commonwealth*, 232 S.W.3d 566, 569 (Ky. App. 2007) ("Applying *Dunn* to the facts of this case, when the drug dog detected the odor of drugs inside Morton's vehicle, particularly at the driver's side door, [Officer] Hord was provided with probable cause to search the vehicle pursuant to the automobile exception which extended to a search of Morton under the facts of this case.").[7]

In sum, we discern no reversible error in the trial court's factual findings or legal analysis about the trooper's smelling a faint odor of marijuana. Next, we address Hudson's challenge to the legality of the pat-down.

## II.    No Reversible Error Regarding the Pat-down

On appeal, Hudson contends that the pat-down was illegal because, in his view, Trooper Ellis did not have a reasonable, articulable concern for his safety. The Commonwealth asserts that this issue was not raised to the trial court and thus was not preserved for our review. In his reply brief, Hudson insists the issue was raised to the trial court and properly preserved, citing a portion of the

---

[7] Both *Dunn* and *Morton* conceded that detection of the scent of illegal drugs (whether by a human officer or a trained dog) established probable cause to search the vehicle though they challenged the legality of searching their persons. *Dunn*, 199 S.W.3d at 776-77; *Morton*, 232 S.W.3d at 569. Nonetheless, we have clearly accepted in prior precedent that when an officer smells marijuana emanating from a lawfully pulled-over vehicle, the automobile exception applies, and the officer may properly search the vehicle without a warrant. *See generally Mayfield*, 590 S.W.3d at 302-303. *See also Greer*, 514 S.W.3d at 568. That precedent remains applicable here, even though the smell of marijuana was faint.

-14-

Commonwealth's memorandum of law filed with the trial court in which the Commonwealth asserted that the pat-down was lawful. (The Commonwealth had cited authority including *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) to the trial court.)

In the alternative, Hudson requests in his reply brief that this Court review this issue about the pat-down for palpable error pursuant to RCr 10.26.

The Commonwealth correctly points out that defense counsel did not orally argue at the suppression hearing that the pat-down was illegal. Based on our review of the suppression hearing, defense counsel did ask Trooper Ellis why he conducted a pat-down and the trooper said he did so for his safety. But despite this inquiry into the reasons for the pat-down, defense counsel did not make an argument that the pat-down was illegal in his closing statement.

In addition to the lack of oral argument on this issue, Hudson's written motion to suppress did not specifically challenge the legality of the pat-down. Instead, he generally asked that all evidence seized (or any evidence derived therefrom) be suppressed because his vehicle was searched without a warrant and, in his view, no exception to the warrant requirement applied. Though the Commonwealth filed a detailed written memorandum of law challenging the

motion to suppress after the hearing, Hudson did not file a similar memorandum of law after the hearing.[8]

While Hudson points to a portion of the Commonwealth's memorandum of law arguing that the pat-down was legal, Hudson does not point to any portion of the record in which he explicitly argued that the pat-down was illegal. Thus, it seems questionable at best whether the alleged error or issue about the pat-down was properly preserved for our review. *See Gasaway v. Commonwealth*, 671 S.W.3d 298, 312-14 (Ky. 2023) (allegations of error, otherwise known as issues, must be raised to the trial court to be properly preserved for appeal, although one does not necessarily have to make the same supporting arguments to the trial court to preserve an issue so long as the issue has been raised to the trial court).

In any event, whether the pat-down issue was preserved or not, we discern no reversible error in the trial court's not granting the motion to dismiss based on any challenge to the legality of the pat-down.

No evidence of criminal activity was directly discovered from the pat-down of Hudson. Contrary to the Commonwealth's statement in its appellee brief that a pipe was found on Hudson when he was patted down, Hudson correctly

---

[8] The suppression hearing was held several days before the case was scheduled to go to trial, seemingly resulting in some time constraints.

points out that the dashcam video shows that a pipe was found on Groves when Groves was patted down, but nothing was found on Hudson when he was patted down. The trial court's findings of fact also note a pipe was found on the passenger (Groves) when Groves was patted down, and again, this is consistent with the dashcam video. But it did not note anything being found on Hudson.

Although nothing illegal was found on him, Hudson's brief argues that when he was patted down, the pat-down was unjustified and contributed to "the coercive environment that resulted in Hudson telling the officer that he had a gun in the car and was a convicted felon." We will address the environment in which Hudson responded to the trooper's questions later, but first address whether the pat-down was justified.

Hudson contends the pat-down was unjustified, asserting Trooper Ellis initially talked to Hudson and Groves in a relaxed manner with the trooper leaning in the passenger-side window and exhibiting no overt signs of fearing for his safety. Hudson points out the trooper never mentioned marijuana in this initial discussion and the trooper did not ask Hudson and Groves to get out of the car until after finding out about Hudson's warrants. Hudson discounts Trooper Ellis' testimony that he ordered the men out of the car for safety reasons and so that he could hear them, asserting the trooper initially appeared relaxed in interactions with the car's occupants and did not express any problems about hearing them.

Hudson concedes the trooper had the authority to order Hudson and Groves out of the car after stopping the car for a traffic violation. *See generally Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977); *Owens v. Commonwealth*, 291 S.W.3d 704, 708 (Ky. 2009). However, he disputes the trooper had reason to pat him down. Hudson points out that the trooper did not obtain Hudson's consent to be patted down. And in Hudson's view, the trooper's relaxed demeanor in the dashcam video contradicts the trooper's testimony about conducting a pat-down because he was concerned for his safety.

Hudson notes Kentucky precedent holding that: "there must be 'specific and articulable' facts, which with 'rational inferences,' support a reasonable suspicion that an individual is armed and dangerous in order to justify the pat-down." *See Frazier v. Commonwealth*, 406 S.W.3d 448, 454 (Ky. 2013) (quoting *Baker v. Commonwealth*, 5 S.W.3d 142, 146 (Ky. 1999)).

Hudson claims the facts known to Trooper Ellis at the time of the pat-down were not sufficient to reasonably suspect Hudson was armed and dangerous. He summarizes these facts as including: Hudson's following vehicles too closely, the trooper's leaning into the pulled-over car and talking with the occupants for a couple of minutes, the trooper's smelling a hint of marijuana coming from the car, Hudson's being unable to immediately find his proof of insurance, Groves' lying

-18-

down in the back seat, and the trooper's learning Hudson had two active non-extradition warrants from Tennessee.

However, Hudson omits that the trooper found out the two warrants were for offenses including fleeing and evading, resisting arrest, attempted robbery, and drug possession. And he does not address what kinds of reasonable inferences might be made from these facts.

So, despite Hudson's being pulled over for traffic violations and his being cooperative, there was evidence of specific facts, which with reasonable inferences, supported a reasonable suspicion that Hudson might be armed and dangerous. The trooper testified he had observed Hudson's erratic driving, smelled a hint of marijuana coming from the car, and found out Hudson had warrants for fleeing and evading, resisting arrest, drug possession, and attempted robbery before he patted Hudson down. Drawing reasonable inferences from these observations, this is certainly enough to create a reasonable suspicion that Hudson was armed and dangerous and to support the trooper's statement that he patted down Hudson for safety reasons.[9]

---

[9] Likely because Hudson did not explicitly challenge the legality of the pat-down to the trial court, the trial court did not analyze whether specific and articulable facts and reasonable inferences therefrom supported a reasonable suspicion that Hudson might be armed and dangerous in its order denying suppression. Nor did the trial court explicitly discuss in its order the trooper's testimony about finding out that Hudson had warrants for other offenses (including drug possession, attempted robbery, and resisting arrest) in addition to fleeing and evading. Nonetheless, we may affirm the trial court for any reason supported by the record. *See, e.g.*, *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009).

Thus, there was no reversible error in the trial court's denying the motion to suppress based on any lack of legal justification for the pat-down. Next, we address Hudson's arguments about his responses to the trooper's questions.

### III. No Reversible Error in Trial Court's Concluding Probable Cause to Search Was Established Based Partly on Hudson's Responses to the Trooper's Questions

In addition to arguing the pat-down was unlawful, Hudson's brief contends: "The physical touching of Hudson by the armed officer contributed to the coercive environment that resulted in Hudson telling the officer that he had a gun in the car and was a convicted felon."

Thus, Hudson challenges the trial court's perception that he voluntarily admitted to being a convicted felon in possession of a handgun. (The trial court determined there was probable cause to search the car based on the faint smell of marijuana coming from the car and Hudson's "voluntarily admitting being a felon in possession of a handgun[.]")

On appeal, Hudson points out that the trooper did not issue a *Miranda*[10] warning before he questioned Hudson immediately after ordering him out of the car and patting him down. Therefore, he contends that his statements to

---

[10] *See generally Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the officer and/or the evidence found in the search following his admitting to being a convicted felon possessing a handgun must be suppressed.

In its appellee brief, the Commonwealth argues this issue is not properly before this Court because defense counsel never argued Hudson's statement was the result of improper interrogation.

In Hudson's reply brief, he does not explicitly contest the Commonwealth's assertion that this issue is not preserved for appeal, and he does not request palpable error review pursuant to RCr 10.26. However, his reply brief states that any issue not specifically addressed therein should not be construed as a concession to the Commonwealth's position, but instead an indication that the issue was already sufficiently addressed in the initial appellant brief.

Based on our review of the record (including Hudson's motion to suppress and the recording of the suppression hearing), Hudson did not argue to the trial court that his responses to the trooper's questions or the evidence seized during the vehicle search should have been suppressed because he was subjected to custodial interrogation without *Miranda* warnings. Instead, his written motion to suppress argued that seized evidence (and evidence derived therefrom) must be suppressed because of the warrantless search. Moreover, defense counsel orally argued at the suppression hearing that the traffic stop was impermissibly extended (so that evidence should be excluded on that basis), but he did not orally argue that

Hudson was improperly subjected to custodial interrogation without a *Miranda* warning.

In sum, Hudson did not argue for suppression based on custodial interrogation without *Miranda* warnings. Of course, we are aware that an allegation of error or issue might be considered raised to the trial court despite one's making different arguments on appeal than those made to the trial court, and that the critical question for preservation purposes is whether the allegation of error or issue was raised to the trial court. *See Gasaway*, 671 S.W.3d at 312-14. Nonetheless, even if we accept that the issue of whether to suppress evidence which allegedly resulted from improper interrogation was raised to the trial court and preserved for review despite the different arguments made to the trial court and on appeal, we discern no reversible error in this regard.[11]

On appeal, Hudson points out the trooper never issued any *Miranda* warnings when asking him any questions. He also asserts the officer's questions went beyond the inquiries into identification and safety concerns which are permitted during traffic stops, *see Rodriguez*, 575 U.S. at 355, and elicited incriminating responses. He contends that the trooper's questions amounted to custodial interrogation due to factors which created a coercive environment, in his

---

[11] In contrast to his oral arguments at the suppression hearing before the trial court, Hudson has not clearly argued on appeal that the trial court erred in determining that the traffic stop was not improperly extended considering precedent such as *Rodriguez*, 575 U.S. 348.

view, including the trooper's directing him to get out of the car, patting him down and then asking again, with another officer present, whether there was anything illegal in the car. The Commonwealth disagrees, arguing that no *Miranda* warning was required because Hudson was not in custody when the trooper questioned him.[12]

Usually, traffic stops do not call for issuing *Miranda* warnings, but "a traffic stop can invoke the requirements of *Miranda* when it is found that a suspect's freedom of action is curtailed to a degree associated with formal arrest." *Butler v. Commonwealth*, 367 S.W.3d 609, 613-14 (Ky. App. 2012) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317 (1984)) (internal quotation marks omitted).

The Commonwealth argues that the facts of this case are like *Butler*, 367 S.W.3d 609, and do not show a curtailment of freedom to the degree associated with a formal arrest. Like Hudson, Butler was ordered to get out of his car during a traffic stop and asked if he had anything illegal, although Butler also

---

[12] In the alternative, the Commonwealth argues any issue about interrogation is moot because the trial court stated the smell of marijuana, by itself, likely established probable cause to search the car. It also notes the trooper's testimony that he intended to search the vehicle once he smelled marijuana emanating from the car, possibly suggesting the seized evidence would have inevitably been discovered regardless of Hudson's responses to the trooper's questions. However, perhaps due to the noted faintness of this smell, the trial court did not definitively find that the smell of marijuana alone established probable cause. Instead, the trial court found that there was probable cause to search the car based on both the smell of marijuana coming from the car and Hudson's admitting to being a convicted felon in possession of a handgun.

complied with the officer's request to hand over illegal items and the opinion does not mention Butler's being patted down. *Id*. at 612.

The Commonwealth points out Hudson was not forcibly removed from the vehicle nor detained in a police car nor handcuffed during the questioning and neither law enforcement officer displayed a weapon. It also asserts "Hudson answered the questions without objection and without coercion." Certainly, Hudson did not verbally object to the questioning based on the dashcam video, although Hudson claims the environment was coercive during the questioning in his initial appellant brief.

Despite Hudson's perceptions that the environment was coercive, we must determine whether he was in custody based on a reasonable person standard and not based on any subjective perceptions:

> The warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), only apply when a person is in custody. "Custodial interrogation has been defined as questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of freedom of action in any significant way." *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky. 2006). "The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave." *Id*. "The term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Wells v.*

> *Commonwealth*, 512 S.W.3d 720, 722-23 (Ky. 2017)
> (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.
> Ct. 1682, 64 L. Ed. 2d 297 (1980)). Several factors have
> been identified to aid our determination: location of
> interview; number of officers present; the demeanor of
> the officers during the interview, including their tone of
> voice and nature of questions; the display of weapons;
> physical touching of the suspect; whether the suspect was
> handcuffed or otherwise restrained; statements made
> during the interview; length of interview; and whether
> the suspect was released or arrested after the interview.
> *Hernandez v. Commonwealth*, 671 S.W.3d 217, 224 (Ky.
> 2023).

*Ellis v. Commonwealth*, 694 S.W.3d 294, 300 (Ky. 2024). Based on the totality of

the circumstances here, we agree with the Commonwealth that Hudson was not in

custody when questioned by the trooper. The questioning occurred on the side of

the road and with two law enforcement officers present. The officers did not

display weapons or use a threatening or accusatory tone or language. The only

physical touching of the suspect was a justifiable pat-down. The nature of the

questions was inquiring into whether there were illegal items in the car or on the

occupants' persons. Although Hudson made incriminating responses to these

questions, the questions do not appear unrelated to protecting the officers' safety as

illegal items may be inherently dangerous and are often accompanied by dangerous

items (such as guns often accompanying illegal substances). The questioning was

brief, and Hudson was not handcuffed until he told the trooper he was a convicted

felon in possession of a handgun at the end of the questioning. Hudson was

ultimately arrested after the car was searched, but he was not placed under arrest prior to or during the questioning.

Although Hudson may not have subjectively felt free to leave when the trooper asked him questions, we cannot say a reasonable person would not feel free to leave under these factual circumstances. Therefore, we discern no reversible error in the trial court's not suppressing evidence based on the lack of *Miranda* warnings given.

In sum, we discern no reversible error in the trial court's denying the motion to suppress. Further arguments made in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Shannon Dupree
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Office of the Solicitor General
Frankfort, Kentucky